# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

No. 06-2441

MADHUMILIND N. POTDAR,

*Petitioner*,

*v.*

PETER D. KEISLER,
acting Attorney General
of the United States,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A93-042-676

———————

ARGUED FEBRUARY 28, 2007—DECIDED OCTOBER 10, 2007

———————

Before RIPPLE, MANION and KANNE, *Circuit Judges*.

PER CURIAM. Madhumilind Potdar, a native and citizen of India, was ordered excluded from the United States by an Immigration Judge ("IJ") on February 3, 1999. He appealed that order to the Board of Immigration Appeals ("BIA" or "Board"), which affirmed the IJ's order on narrower grounds. He subsequently filed a motion to reopen his exclusion proceedings with the Board and, on November 7, 2003, the Board granted his motion and remanded the case to the IJ. On remand, the IJ concluded

that he lacked jurisdiction and certified the case back to the
Board. On April 26, 2006, the Board issued a new opinion,
vacating its 2003 order. Mr. Potdar timely petitions for
review of this decision. We conclude that we lack jurisdic-
tion.

# I

## BACKGROUND

Mr. Potdar first entered the United States without
authorization in 1981. In 1994, he applied for legalization
benefits under the Immigration Reform and Control Act
("IRCA"), Pub. L. 99-603, 100 Stat. 3359 (1986). *See* A.R. at
198. While he awaited adjudication of his legalization
application, Mr. Potdar needed to return to India to at-
tend a family funeral. He sought and was granted ad-
vance parole, which allows an alien to leave the United
States temporarily without being deemed to have aban-
doned any pending applications for immigration relief.
After a month in India, Mr. Potdar returned to the United
States and was paroled into the Country for a period of one
year. Three months later, for reasons undisclosed by the
record, the Service[1] revoked Mr. Potdar's parole and placed

---

[1] At these early stages of Mr. Potdar's immigration history,
his proceedings involved the Immigration and Naturaliza-
tion Service ("INS"). On March 1, 2003, the relevant functions of
the INS were transferred to the Department of Homeland
Security ("DHS") and divided among the United States Citizen-
ship and Immigration Service ("USCIS") and other departments
within DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-
296, 116 Stat. 2135. For ease of reading, we shall refer collectively
(continued...)

him in exclusion proceedings. The record does not contain any information about the status of his legalization application at that time.

Before the IJ, Mr. Potdar moved to terminate exclusion proceedings. He contended that, because he was a legalization applicant who had obtained advance parole prior to his departure and returned to the United States on the authority of that advance parole document, he was not an "arriving alien" upon his return. A.R. at 229-30 (citing *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), and *Espinoza-Gutierrez v. Smith*, 94 F.3d 1270 (9th Cir. 1996)). Mr. Potdar attempted to locate evidence of his advance parole grant from the Service through a series of Freedom of Information Act requests; when those requests proved unsuccessful, he substantiated his claim that he did obtain advance parole with his own affidavit. Counsel for the Department of Homeland Security ("DHS") objected on the ground that it was Mr. Potdar's burden to produce the advance parole document and to demonstrate an entitlement to termination of proceedings. The IJ agreed with DHS and determined that Mr. Potdar had failed to meet his burden of proving that he had obtained advance parole. Based on this determination, the IJ then concluded that Mr. Potdar's motion to terminate exclusion proceedings could not be granted. The IJ further concluded that Mr. Potdar was excludable on three separate grounds: that he had committed visa fraud, *see* 8 U.S.C. § 1182(a)(6)(C)(i), that he was an arriving alien not in possession of a valid

---

[1] (...continued)
to the benefits-granting divisions of these agencies as the "Service" and the prosecutorial divisions as the DHS.

immigrant visa, *see id.* § 1182(a)(7)(A)(i)(I), and that he was an arriving alien not in possession of a valid non-immigrant visa, *see id.* § 1182(a)(7)(B)(i)(II). Accordingly, the IJ ordered that Mr. Potdar be excluded from the United States. A.R. at 113.

The BIA affirmed this decision in April 2003, although on different grounds. The Board first concluded that, outside the Ninth Circuit, the doctrine announced in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), had no application to returning legalization applicants like Mr. Potdar, and therefore he had attempted to "enter" the United States when he returned from his brief trip to India. However, unlike the IJ, the Board acknowledged that Mr. Potdar indeed had been paroled into the United States, but further noted that his parole had been revoked. Accordingly, Mr. Potdar was returned to the status he had held before he was paroled, i.e., an alien seeking to enter the United States. On this basis—rather than the failure of Mr. Potdar to produce evidence of advance parole—the Board held that Mr. Potdar properly was subject to exclusion proceedings. Addressing the grounds for exclusion, the Board disagreed with the IJ that the charges of fraud had been sustained or that the failure of Mr. Potdar to produce a non-immigrant visa was an adequate ground of excludability. Because he was seeking legalization, the Board concluded, Mr. Potdar had immigrant intent, and, therefore, the final ground of failure to present an immigrant visa was the appropriate basis for exclusion.

Mr. Potdar did not file a timely petition for review of the Board's final order of exclusion. Instead, he continued to pursue other avenues of immigration relief. His employer sponsored him for an employment-based visa and submitted a labor certification application on his behalf in

April 2001. After this application was approved, the employer petitioned for an immigrant visa on his behalf, and Mr. Potdar applied for adjustment of status.

On the basis of these pending applications, in August 2003, Mr. Potdar moved to reopen proceedings before the BIA. *See* A.R. at 61. He requested that proceedings be reopened so that the Service could consider his pending applications for an immigrant worker visa and adjustment of status. DHS did not respond to the motion. The Board ruled in Mr. Potdar's favor on November 7, 2003; it granted his motion to reopen and remanded the case to the IJ. *See* A.R. at 56.

When the case was before the IJ on remand, Mr. Potdar again moved to terminate exclusion proceedings. The IJ construed the remand order from the Board and Mr. Potdar's subsequent motion as a request for adjustment of status *by the immigration court*. The IJ concluded that he lacked jurisdiction to entertain an application for adjustment of status for an alien in Mr. Potdar's circumstances and certified, sua sponte, the record to the Board.

Upon consideration of the certified record, the Board held that it had "erroneously granted" Mr. Potdar's motion because it lacked authority to grant an application for adjustment of status to Mr. Potdar. A.R. at 2. It therefore vacated its decision granting the motion to reopen. Mr. Potdar timely petitioned for review of this order.

## II

### DISCUSSION

#### A.

Mr. Potdar challenges the Board's final order, vacating its prior grant of his motion to reopen.

The parties dispute the scope of our review. Specifically, Mr. Potdar contends that, by virtue of the Board's decision to reopen the case in 2003, we may now reach all issues relating to the Board's initial affirmance of his exclusion order from which he had failed to petition for review in a timely manner. The acting Attorney General contends that our jurisdiction is limited to the most recent order denying the motion to reopen.

We conclude that the Board's order reopening the case did not resurrect jurisdiction over the issues underlying the initial exclusion order. When the Board reopened the case, under this circuit's precedent, it vacated its order affirming exclusion and, therefore, rendered Mr. Potdar's proceedings non-final. *See Gao v. Gonzales*, 464 F.3d 728, 729-30 (7th Cir. 2006). It did not, however, reopen for reconsideration every issue decided in Mr. Potdar's initial proceedings. Instead, the Board reopened to consider new evidence that, despite Mr. Potdar's excludability, he may have been entitled to relief from exclusion. The final order vacating the earlier order to reopen is the final order from which a timely petition for review was taken and, therefore, is the only order over which our jurisdiction extends. *See* 8 U.S.C. §§ 1252(a)(1), (b)(1), (b)(6). We examine Mr. Potdar's challenges only to that order and to the issues decided in the course of the reopened proceedings.

**B.**

In Mr. Potdar's motion to reopen, the new evidence that he asked the Board to consider included an approved labor certification, a pending petition for an employment-based visa and a pending application for adjustment of status.

Mr. Potdar claimed that his labor certification, which had been filed prior to April 30, 2001, entitled him to the protections of § 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i). Mr. Potdar asked for a stay of removal through the course of his reopened proceedings in order to permit his "Petition for Alien Worker (form I-140) and Application to Adjust to Permanent Resident Status (form I[-]485) [to be] adjudicated by the [Service]." A.R. at 61. On the basis of this request, and without opposition from DHS, the Board reopened his case "for consideration of an application for adjustment of status." A.R. at 56.

It is through the lens of the motion to reopen, and the Board's initial action on that motion, that the remainder of the reopened proceedings must be evaluated. The gravamen of Mr. Potdar's request to the Board was that the part of the immigration agency responsible for adjudication of his applications ought to be given an opportunity to act prior to his removal from the United States. The Board apparently agreed. In his reopened proceedings before the IJ, Mr. Potdar couched the same request in a motion to terminate exclusion proceedings. Although he challenged the grounds of exclusion on their merits in his motion, as he likewise has attempted to do in this court, Mr. Potdar made clear that his request for termination of proceedings and the reinstatement of his parole served a particular purpose: to render his exclusion order non-final and allow "*adjudication* of his Legalization application or any other application for status *pending with the [Service] office*." A.R. at 20 (emphasis added).

Despite the context in which the case was reopened, the IJ nevertheless construed Mr. Potdar's submission as a request that *the IJ* grant his application for adjustment of status *in exclusion proceedings.* The IJ concluded that he lacked jurisdiction over that matter because aliens subject

to exclusion proceedings must seek adjustment from the District Director of the Service rather than before the immigration courts. *See* 8 C.F.R. § 1245.2(a)(1); *see also Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1096 (9th Cir. 2004).

In our view, the IJ plainly misapprehended the Board's order reopening proceedings. Mr. Potdar did not request adjustment of status from the IJ; he requested only an opportunity to pursue that relief through appropriate administrative channels. Rather than construe the application as one for adjustment, the IJ should have considered whether, *to allow administrative adjudication to proceed*, it would have been appropriate to terminate or continue exclusion proceedings. Mr. Potdar's request to the IJ amounted to a request for a continuance. The relevant point, for our purposes, is that the IJ answered a question he was never asked; the approach he took to the case was not responsive to the inquiry the Board had placed before him in granting Mr. Potdar's motion to reopen the proceedings.

When the case returned to the Board on the IJ's certification, the Board did not correct the error. The Board simply concurred with the IJ that the immigration courts lacked jurisdiction over an application, which, so far as the record reveals, never was filed with the immigration court. *See Mengistu v. Ashcroft*, 355 F.3d 1044, 1047 (7th Cir. 2004) (remanding when BIA's ground for denying a motion to reopen was "a non sequitur").

We must conclude that we have no jurisdiction to review the denial of the continuance in Mr. Potdar's case. *See Ali v. Gonzales*, ___ F.3d ___, Nos. 06-3240 & 06-3879, 2007 WL 2684825 (7th Cir. Sept. 14, 2007).

DISMISSED FOR LACK OF JURISDICTION

A true Copy:

       Teste:

                         _____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*