In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-2638

MIREILLE TCHEMKOU,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY,
Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A79 573 118

_____

ON MOTION FOR ATTORNEYS' FEES AND COSTS

_____

FEBRUARY 22, 2008

_____

Before RIPPLE, ROVNER and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge.* In a previous opinion, we granted a petition for review of an order of the Board of Immigration Appeals ("BIA") filed by Mireille Tchemkou, a native and citizen of Cameroon, who had been denied asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). *Tchemkou v. Gonzales*, 495 F.3d 785 (7th Cir. 2007). We did so because we deter-

mined that the record compelled a finding that Ms. Tchemkou had suffered past persecution and was likely to suffer further persecution and torture if she were returned to her native country. Ms. Tchemkou now seeks an award of attorneys' fees and costs. Presuming familiarity with our previous opinion, we now address the matter of attorneys' fees.

## A.

A petitioner in an immigration case is eligible for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, if she can establish the statutory grounds for an award. *See Floroiu v. Gonzales*, 498 F.3d 746, 748 (7th Cir. 2007). Specifically, a petitioner must show that: (1) she was a prevailing party; (2) the Government's position was not substantially justified; (3) no special circumstances existed that would make an award unjust; and (4) she filed a timely and complete application for fees. 28 U.S.C. § 2412(d)(1)(A)-(B); *Floroiu*, 498 F.3d at 748; *Muhur v. Ashcroft*, 382 F.3d 653 (7th Cir. 2004). It is undisputed that Ms. Tchemkou is the prevailing party and that she timely filed her motion; the Government contends, however, that its position was substantially justified.

It is the Government's burden to prove that its position[1] was "substantially justified." *Floroiu*, 498 F.3d at 748;

---

[1] The Government argues that, in determining whether its "position" was substantially justified, only the arguments made during litigation, not the underlying agency decision, should be considered. In other contexts, we have noted that "[t]he 'position of the United States' includes the underlying

(continued...)

*Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). To be substantially justified, the Government's position must be "'justified in substance or in the main' or 'justified to a degree that could satisfy a reasonable person.'" *Floroiu*, 498 F.3d at 748 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Government meets this burden if it shows that (1) it had a reasonable basis in truth for the facts alleged; (2) it had a reasonable basis in law for the theory propounded; and (3) there was a reasonable connection between the facts alleged and the theory propounded. *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

The Government contends that it has met this burden. Specifically, it maintains that it was substantially justified in arguing that Ms. Tchemkou had not suffered past persecution because: (1) she voluntarily returned to Cameroon after living in Benin; (2) the three incidents of abuse that she endured were the result of different political activities; and (3) she was unable to articulate with specificity what political opinion she held that would cause her harm.

---

[1]  (...continued)
agency conduct as well as the agency's litigation position." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994) (considering underlying validity of regulation as well as Government's defense of regulation in litigation). However, as noted by the Government, unlike the Ninth Circuit, *see Thangaraja v. Gonzales*, 428 F.3d 870, 873 (9th Cir. 2005), we have not had to address the question whether this rule applies with equal force to the immigration context. The present fee petition does not require that we resolve the issue because both parties agree that the agency's litigation position mirrored the approach taken by the BIA.

The first rationale proffered by the Government was not part of its presentation to the court in its brief, nor was it a part of the agency's underlying decision. Consequently, it was not part of the "position" of the Government that we must evaluate.

With respect to the second of the Government's arguments, the Government offered no support for the proposition that each of the incidents of abuse should be considered in isolation. Indeed, as we set forth in our previous opinion, we have rejected a "compartmentaliz[ed]" approach to persecution and repeatedly have held that the BIA must look at the record "as a whole" in determining whether persecution has occurred. *Tchemkou*, 495 F.3d at 790-91 (quoting *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006)). Indeed, in its response to Ms. Tchemkou's fee request, the Government still fails to cite any support for the proposition that Ms. Tchemkou's incidents of abuse should be evaluated separately. Having failed to provide any support for this argument, the Government also has failed to show that its position was substantially justified. *See Floroiu*, 498 F.3d at 749.[2]

We turn then to the Government's third argument that, it claims, rendered its position substantially justified: Ms. Tchemkou was unable to articulate a precise political opinion that would subject her to persecution if she were returned to Cameroon. This argument would be more compelling if Ms. Tchemkou had not suffered grievous persecution in the past. However, the question whether

---

[2] Moreover, the Government fails to cite any authority to support its contention that its other positions were substantially justified.

Ms. Tchemkou will suffer further persecution cannot be separated from the question whether Ms. Tchemkou has suffered past persecution. As we already have noted, there was no justification for considering her previous persecution as discrete incidents. Ms. Tchemkou's prior political activities, and the violence of her government's response, not only established Ms. Tchemkou's past persecution, but they also revealed that the Cameroonian government had identified Ms. Tchemkou as a trouble-maker and someone whose voice it needed to quell. In light of these events, we cannot conclude that the Government's view of Ms. Tchemkou's political opinion as imprecise, and therefore unlikely to subject her to future persecution, was substantially justified.

**B.**

In addition to objecting to the petition on the ground that its position was substantially justified, the Government also submits that, even if we decide that an award is in order, the amount requested by Ms. Tchemkou is exorbitant. When calculating an EAJA award, we must exclude "hours that were not 'reasonably expended,'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), and we may reduce the amount of the award accordingly, *see* 28 U.S.C. § 2412(d)(1)(C).

If Ms. Tchemkou were seeking reimbursement for the 568 hours recorded by her attorneys, we would agree with the Government that, given the issues raised by the appeal, such a request would be difficult to justify. However, Ms. Tchemkou's counsel reduced this amount by half based on the efficiency, skill and experience of the professionals involved. *See Hensley*, 461 U.S. at 434

(noting that "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely," therefore "[c]ounsel . . . should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). Ms. Tchemkou now seeks reimbursement for, among other entries, approximately 150 hours for the opening brief, 40 hours for the reply brief and 20 hours of internal and external communication time. The Government takes issue with these categories, and we shall evaluate its arguments in the discussion that follows.

The Government first urges us to compare the fee sought here with the amounts awarded in other asylum cases. The disparity, the Government claims, should "cause the Court pause in this matter." Respondent's Opposition at 11 (citing *Floroiu*, 498 F.3d at 750 (awarding $5,937.50 in fees and $324 in costs), and *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004) (awarding $7,053.50 in fees and $459.52 in costs)). We do not believe that a comparison of raw numbers of hours is helpful in determining whether the hours here were "reasonably expended." If the Government could show that the cases cited were similar to the present case with respect to volume of the background materials, the procedural nature of the case, and the number and complexity of the issues presented, its argument would carry more weight. The Government, however, has offered no such comparison. Moreover, we did not suggest in either *Floroiu* or *Muhur* that we were establishing a baseline according to which all other asylum fee awards should be compared; indeed, at least with respect to the petition in *Muhur*, we characterized the fee request as "modest," 382 F.3d at 656.

In addition to objecting to the total number of hours spent by Ms. Tchemkou's attorneys, the Government

specifically takes issue with the number of hours spent on the opening brief. The Government claims that "[e]ven the least experienced attorney should be able to prepare a fact-based asylum brief from an unfamiliar record in one work week." Respondent's Opposition at 13. We respectfully disagree. The administrative record for this matter is approximately 600 pages long; contained in this record are numerous fact-laden documents produced by the State Department, by the United Nations and by Amnesty International. Given the nature of the administrative record, it would be a herculean feat, indeed, to be able to master such a record and incorporate it into an intelligible appellate brief in the time proposed by the Government.

The Government also criticizes Ms. Tchemkou's counsel for the "glacial preparation of briefs on reply." *Id.* Again, we believe that a conscientious counsel reasonably could expend a week's time reviewing the Government's submission, familiarizing herself with the Government's authorities (twenty-six of which were not cited in the opening brief) and drafting a responsive brief that complies with all of our court's requirements.

Finally, the Government questions the time spent by Ms. Tchemkou's counsel on internal communications. Specifically, the Government believes it is "wholly unreasonable" for it to "pay for three hours of work for each one-hour conversation among three attorneys." *Id.* The Government appears to argue for a blanket rule according to which internal communication time never would be reimbursed under the EAJA. Such a rule would be totally unrealistic. The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking ad-

vice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone. To be sure, internal meetings are not always the model of efficiency, and discussions of one case or client easily can bleed over into other matters. Consequently, attorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that we may assess whether the amount of time recorded was "reasonably expended." In the present case, few details are provided with respect to the internal communications of Ms. Tchemkou's counsel. Although we do not doubt that some internal communication was necessary to coordinate the successful effort on behalf of Ms. Tchemkou, without the benefit of greater explanation from counsel, we cannot say that all of the internal communication time was "reasonably expended." Consequently, we shall reduce counsel's internal communication time to ten attorney hours.

Apart from the amount of time requested for internal communications, we believe the hours for which reimbursement is sought were "reasonably expended." Accordingly, Ms. Tchemkou's counsel shall be reimbursed for 247.75 hours of preparation time.

Ms. Tchemkou's attorneys also seek a cost-of-living adjustment to the statutory hourly rate of $125 per hour; such an increase is permitted by statute in the discretion of the awarding court. *See* 28 U.S.C. § 2412(d)(2)(A) (setting the attorney-fee rate at "$125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee"). A cost-of-living adjustment must be indexed to the year in which the fees are incurred, not to the year in which an award is made. *See Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th Cir.

1994). Here, Ms. Tchemkou's "fees" were incurred in 2006 and 2007. For ease of calculation, Ms. Tchemkou's counsel employed the multiplier for 2006 for all of the fees, which yielded a rate of $161.85 per hour. We believe that, given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted. The Government does not object either to the increase in general or to the specific calculation proposed by Ms. Tchemkou's counsel. Consequently, we approve the proposed $161.85 per hour rate. *Cf. Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 969 (D.C. Cir. 2004) (approving an increase in hourly rate to reflect the increase in cost of living between 1996, when rate last was adjusted, and 2003, when costs were incurred).

## C.

In addition to attorneys' fees, Ms. Tchemkou's counsel seek reimbursement for various costs associated with her appeal. Specifically, counsel request reimbursement for $1,179.94 in fees for computerized research, courier service, Federal Express deliveries, long distance phone calls, postage, printing charges and research fees.[3] The Government objects to this total, noting that, although the EAJA contemplates the award of costs, those costs are limited to the costs enumerated in 28 U.S.C. § 1920. *See* 28 U.S.C. § 2412(a)(1). However, this court has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges, *see Burda v.*

---

[3] In its reply, counsel concede that a $99 fee for "LITWATCH" was erroneously charged and state that they will subtract that charge from the total request for costs.

*M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993); *see also* 28 U.S.C. § 1920(3) (including fees for printing among reimbursable costs), and has held that costs of computerized legal research are recoverable as part of an attorney-fee award, *see Haroco v. American Nat'l Bank & Trust of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 2004).

Ms. Tchemkou's attorneys also seek reimbursement of $2,347 in document reproduction charges. Section 1920 does allow reimbursement for document reproduction; however, such fees are limited to "papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). As well, Seventh Circuit Rule 39 provides that the costs "shall not exceed the maximum rate per page as established by the clerk of the court of appeals," currently $.10 per page. The request for over $2,347 in reproduction costs suggests that counsel did not adhere to these limits, and counsel do not contend otherwise in either their motion for fees or their reply. The motion's itemized accounting lists only weekly "duplication charges," without further explanation. Although some copying charges undoubtedly were warranted, it is difficult to fathom that there were over 23,000 pages of documents "necessarily obtained" for this appeal. Consequently, in the absence of adequate explanation by counsel, we shall deny these costs.

Lastly, Ms. Tchemkou's counsel seek $32.58 in "supplies expenses." The itemized records are unclear as to what was purchased on the six different occasions that supplies were charged to the client. Furthermore, counsel have failed to explain why they are entitled to recover money spent on office supplies. This amount, as well, shall not be allowed.

**Conclusion**

For the reasons set forth above, we grant Ms. Tchemkou's petition for fees and costs. The Government shall reimburse Ms. Tchemkou for $41,716.84 in attorneys' fees and $1,179.94 in costs.

IT IS SO ORDERED.