In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-1020

ARKADIY L. KHOLYAVSKIY,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A71-093-229

ON MOTION FOR ATTORNEYS' FEES AND COSTS

APRIL 3, 2009

Before FLAUM, RIPPLE and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In a previous opinion, we granted the petition for review of an order of the Board of Immigration Appeals ("BIA") filed by Arkadiy Kholyavskiy, a native of the former Soviet Union, who had been denied asylum, withholding of removal and

relief under the Convention Against Torture ("CAT"). *Kholyavskiy v. Mukasey*, 540 F.3d 555 (7th Cir. 2008).[1] Mr. Kholyavskiy now moves for an award of attorneys' fees and costs. For the reasons set forth in this opinion, we deny the petition.

**A.**

A petitioner in an immigration case is eligible for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), if he can establish the statutory grounds for an award. *See Floroiu v. Gonzales*, 498 F.3d 746, 748 (7th Cir. 2007). Specifically, a petitioner must show that: (1) he was a prevailing party; (2) the Government's position was not substantially justified; (3) there existed no special circumstances that would make an award unjust; and (4) he filed a timely and complete application for fees. 28 U.S.C. § 2412(d)(1)(A)-(B); *Floroiu*, 498 F.3d at 748; *Muhur v. Ashcroft*, 382 F.3d 653, 654-55 (7th Cir. 2004). It is undisputed that Mr. Kholyavskiy is a prevailing party[2] and timely filed his motion; the Gov-

---

[1] In considering Mr. Kholyavskiy's request, we presume familiarity with our previous opinion.

[2] In *Muhur v. Ashcroft*, 382 F.3d 653, 654 (7th Cir. 2004), we held that a party who secures a remand for reconsideration of an asylum application is a prevailing party for purposes of the EAJA. Analogizing to the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 300-03 (1993), we reasoned that, once a petitioner has persuaded the court of appeals to set aside
(continued...)

ernment contends, however, that its position was substantially justified.

To be substantially justified, the Government's position must be "justified in substance or in the main" or "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Government bears the burden of proving that its position[3] was, in fact, "substantially justified." *Floroiu*, 498 F.3d at 748; *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Government meets its burden if: (1) it had

---

[2] (...continued)
the determination of an administrative agency, the petitioner is a "prevailing party in the judicial proceeding because nothing remains to be done by the court, which having found error has finished with the case and relinquished jurisdiction." *Muhur*, 382 F.3d at 654.

[3] There is some question whether, in the context of immigration proceedings, the "position" of the Government is limited to the arguments made during litigation or also includes the underlying decision of the BIA. In other contexts, we have held that "[t]he 'position of the United States' includes the underlying agency conduct as well as the agency's litigation position." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). Although other circuits have extended this rationale to the immigration context, *see, e.g., Thangaraja v. Gonzales*, 428 F.3d 870, 873 (9th Cir. 2005), we have not had an occasion to address directly the applicability of this rule to immigration cases. *See Tchemkou v. Mukasey*, 517 F.3d 506, 509 n.1 (7th Cir. 2008). In this case, as well, we need not reach the issue: Here, the agency's litigation position does not differ in material respects from the approach taken by the BIA.

a reasonable basis in truth for the facts alleged, (2) it had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts alleged and the theory propounded. *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006).

"The outcome of a case is not conclusive evidence of the justification for the government's position.*" United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). Similarly, the fact that we found that part of the BIA's determination was not supported "by substantial evidence does not foreclose the possibility that the position was substantially justified." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). Instead, we must analyze and evaluate "the factual and legal support for the government's position throughout the entire proceeding." *Hallmark Constr. Co.*, 200 F.3d at 1080. Our case law has identified some relevant considerations in conducting this evaluation. For instance, courts are more likely to conclude that the Government's position is substantially justified if it is supported by our precedent or that of other courts. *See Krecioch v. United States*, 316 F.3d 684, 689 (7th Cir. 2003) (finding the Government's position to be substantially justified in part because it was "supported by precedent from other federal circuits"). Moreover, "uncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." *Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir. 1994). By contrast, "[s]trong language against the government's position in an opinion assessing the merits of a key issue is evidence in support of an award

of EAJA fees," *Golembiewski*, 382 F.3d at 724, as is whole-sale rejection of the Government's arguments by the merits panel, *see id.* at 725 (awarding fees and observing that "[w]e did not reject any issue raised by the plaintiff on appeal nor did we adopt or affirm any position taken by the Commissioner"). With these guidelines in mind, we turn to the Government's position in this litigation.

**B.**

The Government maintains that the position it took in response to Mr. Kholyavskiy's applications for relief from removal was substantially justified. Specifically, it observes that, in his appeal to this court, Mr. Kholyavskiy raised seven issues, but prevailed on only two. With respect to the first of his meritorious arguments—Mr. Kholyavskiy's claim that his experiences as a child in the former Soviet Union constituted past persecution on account of his Jewish religion and ethnicity—the Government contends that we did not conclude necessarily that the BIA's conclusion was "incorrect." Opposition to Fee Petition at 11. Rather, we held "only that it did not fully consider the possibility that Kholyavskiy's age might have made him more susceptible to persecution." *Id.* Similarly, the Government notes that both the BIA's determination with respect to past persecution and the Government's own arguments in support of that determination were grounded in circuit case law. *See id.* With respect to the second issue on which Mr. Kholyavskiy prevailed, his claim for humanitarian asylum, the Gov-

ernment notes that we held that the BIA did not adequately consider whether Mr. Kholyavskiy "might suffer 'other serious harm' if returned to Russia because he might not have access to his medication for his mental illness." *Id.* at 12. However, earlier in the opinion, we concluded that the unavailability of his medication could not be considered a form of persecution. The Government reasons, therefore, that, "[t]hough the Board may have missed the distinction drawn by the Court, that does not make its handling of the issue irrational." *Id.*

### 1.

On review of the entire record, we agree with the Government that its position was substantially justified. First, the Government is correct that, with respect to the issues raised on appeal, we rejected many of Mr. Kholyavskiy's positions and affirmed the agency's action. We held that Mr. Kholyavskiy was not denied a fair hearing before the Immigration Judge, that he was not entitled to a regulatory presumption of future persecution based on his prior refugee status, that he had not established that he was likely to suffer future persecution based on his refugee status, his mental illness or his Jewish background, that he was not entitled to relief under the CAT, and that he had not established his eligibility for a grant of humanitarian asylum based on the severity of his persecution. Indeed, we remanded only two issues to the BIA for further consideration: (1) Mr. Kholyavskiy's claim of past persecution based on his Jewish religion and ethnicity and (2) the possibility that Mr. Kholyavskiy

qualified for humanitarian asylum based on the reasonable possibility that he would "suffer other serious harm upon removal" to Russia. *Kholyavskiy*, 540 F.3d at 577 (quoting 8 C.F.R. § 1208.13(b)(1)(iii)(B)). The fact that we agreed with the Government's position with respect to the bulk of the issues raised by Mr. Kholyavskiy weighs against an award of fees under the EAJA. *Cf. Golembiewski*, 382 F.3d at 725 (considering whether we had rejected any of the plaintiff's arguments on appeal and whether we had accepted or affirmed any of the Government's positions on appeal).

**2.**

We turn now to the first issue on which Mr. Kholyavskiy prevailed, the issue of his past persecution based on his Jewish religion and ethnicity. With respect to this issue, Mr. Kholyavskiy maintains that we "resoundingly rejected" the BIA's rationale based on well-established case law; consequently, the Government's claim that its position was justified is "baseless." *See* Petitioner's Reply to Respondent's Opposition to Petitioner's Motion for Attorneys' Fees at 3, 3 n.1. We believe that Mr. Kholyavskiy underestimates the complexity of his situation from an asylum-law perspective.

There are two aspects of Mr. Kholyavskiy's situation that we found compelling. The first was Mr. Kholyavskiy's severe mistreatment at the hands of his classmates and neighbors on account of his Jewish religion and ethnicity. The more serious of the incidents occurred several years prior to Mr. Kholyavskiy's arrival in the United States;

the IJ and BIA believed that the effect of these incidents, and therefore their significance, dissipated over time. This is a conclusion that, on its face, is not wholly unreasonable. Nevertheless, it fails to account for the fact that, although somewhat removed in time, the incidents took place when Mr. Kholyavskiy was child, which rendered his experiences even more traumatic.

The second aspect of Mr. Kholyavskiy's situation that justified remand was the background of pervasive harassment that the Kholyavskiy family, as a unit, endured. However, in Mr. Kholyavskiy's submissions to the BIA and to this court, he often tied the discussion of the threats and harassment experienced by his family to the discussion of whether he still maintained his legal status as a refugee. With respect to the latter issue, the BIA correctly ruled that, after Mr. Kholyavskiy became a lawful permanent resident, he was no longer a refugee for purposes of a statutory presumption of persecution. Where the BIA's analysis went astray, however, was in failing to recognize that, regardless of his refugee status, these events still were relevant to the question whether Mr. Kholyavskiy endured past persecution. In other words, although his refugee status did not survive the grant of lawful permanent residency, the historical facts on which that status was based did not change.

In sum, there is no question that, based on the BIA's failure to consider Mr. Kholyavskiy's age at the time of the incidents and its failure to consider Mr. Kholyavskiy's mistreatment against the background of pervasive antisemitic actions towards the Kholyavskiy family,

Mr. Kholyavskiy's asylum claim had to be remanded to the BIA. However, the confluence of factors here—Mr. Kholyavskiy's age, the lapse of time, the claim of continued refugee status, and harassment targeted at the family as a unit—places this outside of the mine-run of cases. This is not a case in which the BIA or the Government chose to ignore precedent or relevant facts; instead, it is a situation in which the combination of the petitioner's immigration status and his family and personal history made the appropriate standard difficult to discern. We believe that this "uncertainty in the law arising from . . . the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." *Marcus*, 17 F.3d at 1037.

**3.**

Finally, we turn to the Government's position with respect to humanitarian asylum. On his petition for review, the focus of Mr. Kholyavskiy's humanitarian-asylum argument was 8 C.F.R. § 1208.13(b)(1)(iii)(A), which allows for a grant of humanitarian asylum based on the severity of past persecution. We agreed with the BIA that Mr. Kholyavskiy did not qualify for humanitarian asylum under this provision. However, Mr. Kholyavskiy's submission also referenced generally 8 C.F.R. § 1208.13(b)(1), which encompasses grants of humanitarian asylum based on the severity of past persecution as well as on the reasonable likelihood that the applicant "will suffer other serious harm upon removal" to his country of origin. 8 C.F.R. § 1208.13(b)(1)(iii)(B).

Our review of the entire humanitarian-asylum provi-
sion, combined with Mr. Kholyavskiy's factual presenta-
tion concerning the hardships he would face if removed
to Russia, convinced us that Mr. Kholyavskiy suf-
ficiently had raised the issue of prospective harm and
that we therefore should remand the case to the BIA so it
could consider whether Mr. Kholyavskiy was eligible
for relief under § 1208.13(b)(1)(iii)(B). *See Kholyavskiy*, 540
F.3d at 577. However, it does not follow that the BIA's
initial failure to consider this possible avenue of relief, or
the Government's defense of the BIA's decision with
respect to humanitarian asylum, was unreasonable.
Although Mr. Kholyavskiy raised the general provision as
well as supporting facts, his presentation on this issue
was less than explicit. The BIA's focus, therefore, on
humanitarian asylum based on the severity of past perse-
cution, as opposed to the likelihood of future harm, was
not unreasonable.

### Conclusion

For the reasons set forth above, we believe that the
Government's position in the underlying litigation was
substantially justified. We therefore deny Mr.
Kholyavskiy's petition for fees and costs.

PETITION DENIED.