In the

# United States Court of Appeals
### For the Seventh Circuit

No. 06-2441

MADHUMILIND POTDAR,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A93-042-676

ON MOTION FOR ATTORNEYS' FEES AND COSTS

OCTOBER 21, 2009

Before RIPPLE, MANION and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In a previous opinion, we granted
the petition for review of an order of the Board of Immigra-
tion Appeals ("BIA" or "Board") filed by Madhumilind
Potdar. The path by which Mr. Potdar reached this court
is a long and tortuous one, recounted in detail in two
prior opinions of this court, *see Potdar v. Keisler*, 505 F.3d

680 (7th Cir. 2007) ("*Potdar I*"); *Potdar v. Mukasey*, 550 F.3d 594 (7th Cir. 2007) ("*Potdar II*"); we presume familiarity with these prior decisions. Currently before the court is Mr. Potdar's motion for attorneys' fees and costs. For the reasons set forth in this opinion, we deny the petition.

**A.**

Petitioners in immigration cases are eligible for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). To be eligible for an award of fees, "a petitioner must show that: (1) he was a prevailing party; (2) the Government's position was not substantially justified; (3) there existed no special circumstances that would make an award unjust; and (4) he filed a timely and complete application for fees." *Kholyavskiy v. Holder*, 561 F.3d 689, 690 (7th Cir. 2009) (citations omitted). Here, Mr. Potdar timely filed a complete petition for fees and costs. Additionally, the Government does not dispute that Mr. Potdar is a prevailing party. *See* Respondent's Opposition at 7 n.1. The Government also does not claim that "special circumstances [exist] that would make an award unjust." *Kholyavskiy*, 561 F.3d at 690. Consequently, the only issue we must resolve is whether the Government's position was substantially justified, an issue on which the Government bears the burden of proof. *Floroiu v. Gonzales*, 498 F.3d 746, 748 (7th Cir. 2007); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir.

2004).[1]

To be substantially justified, the Government's position must be "justified in substance or in the main" or "justified to a degree that could satisfy a reasonable person." *Pierce*

---

[1] We previously have observed that "[t]here is some question whether, in the context of immigration proceedings, the 'position' of the Government is limited to the arguments made during litigation or also includes the underlying decision of the BIA." *Kholyavskiy v. Holder*, 561 F.3d 689, 691 n.3 (7th Cir. 2009). We explained in *Kholyavskiy* that

> [i]n other contexts, we have held that "[t]he 'position of the United States' includes the underlying agency conduct as well as the agency's litigation position." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). Although other circuits have extended this rationale to the immigration context, *see, e.g.*, *Thangaraja v. Gonzales*, 428 F.3d 870, 873 (9th Cir. 2005), we have not had an occasion to address directly the applicability of this rule to immigration cases. *See Tchemkou v. Mukasey*, 517 F.3d 506, 509 n.1 (7th Cir. 2008).

*Id.* We did not have to reach the issue in *Kholyavskiy* because, in that case, "the agency's litigation position d[id] not differ in material respects from the approach taken by the BIA." *Id.*

Here, we need not address the issue for another reason: Regardless of whether we consider the underlying BIA decision as part of the position of the Government, we still reach the conclusion that the Government's position was substantially justified. However, because Mr. Potdar has included the BIA's decision as one of the bases for his argument, we assume, for the purposes of our analysis, that this is part of the position of the Government.

*v. Underwood*, 487 U.S. 552, 565 (1988). The Government meets this burden if: "(1) it had a reasonable basis in truth for the facts alleged, (2) it had a reasonable basis in law for the theory propounded, and (3) there was a reasonable connection between the facts alleged and the theory propounded." *Kholyavskiy*, 561 F.3d at 691 (citing *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006)). The "EAJA is not an automatic fee-shifting statute in favor of litigants who prevail against the government," *Zapon v. United States Dep't of Justice*, 53 F.3d 283, 284 (9th Cir. 1995); "[t]he outcome of a case is not conclusive evidence of the justification for the government's position*,*" *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). More specific to the immigration context, a determination that part of the BIA's decision was not supported "by substantial evidence does not foreclose the possibility that the position was substantially justified." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). Rather, we must consider "the factual and legal support for the government's position throughout the entire proceeding." *Hallmark Constr. Co.*, 200 F.3d at 1080.

As we observed in *Kholyavskiy*, we have identified some relevant considerations for evaluating the Government's position:

> For instance, courts are more likely to conclude that the Government's position is substantially justified if it is supported by our precedent or that of other courts. *See Krecioch v. United States*, 316 F.3d 684, 689 (7th Cir. 2003) (finding the Government's position to be substantially justified in part because it was "sup-

ported by precedent from other federal circuits"). Moreover, "uncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." *Marcus v. Shalala*, 17 F.3d 1033, 1037 (7th Cir. 1994). By contrast, "[s]trong language against the government's position in an opinion assessing the merits of a key issue is evidence in support of an award of EAJA fees," *Golembiewski*, 382 F.3d at 724, as is wholesale rejection of the Government's arguments by the merits panel, *see id.* at 725 (awarding fees and observing that "[w]e did not reject any issue raised by the plaintiff on appeal nor did we adopt or affirm any position taken by the Commissioner").

561 F.3d at 691-92.

## B.

The Supreme Court has cautioned that we must not treat different phases of litigation as "atomized line-items" for purposes of determining whether the Government's position was substantially justified. *Commissioner, INS v. Jean*, 496 U.S. 154, 162 (1990). However, for ease of analysis, we shall review separately the different phases of the present litigation and the parties' approaches at each stage. After doing so, we then shall consider whether the Government's position "as an inclusive whole," *id.*, was substantially justified. We begin our review with Mr. Potdar's motion to reopen before the BIA. Mr. Potdar does not seek fees for any proceeding pre-

dating the filing of the petition for review with this court. However, because many of the arguments and decisions made during the administrative process frame the arguments made to this court, we recount those as well.

### 1. Administrative Proceedings

In April 2003, the BIA determined that Mr. Potdar was excludable. In its decision affirming the Immigration Judge ("IJ"), the BIA rejected several grounds of exclusion relied upon by the IJ; however, it did find that, "because Mr. Potdar was seeking legalization, . . . he had immigrant intent, and, therefore, he was excludable based on his failure to present an immigrant visa." *Potdar II*, 550 F.3d at 595. Mr. Potdar did not appeal from that order, but pursued other avenues of relief. "Specifically, his employer sponsored him for an employment-based visa and submitted a labor certification application on his behalf. After this application was approved, the employer petitioned for an immigrant visa on his behalf, and Mr. Potdar applied for adjustment of status." *Id*. At that point, Mr. Potdar moved to reopen proceedings before the BIA so that his pending applications could be processed by the District Director. His pro se motion requested that "the board . . . re open [sic] my case and consider these new findings. Further, I would request the board to grant a stay of removal until my Petition for Alien Worker (form I-140) and Application to Adjust to Permanent Resident Status (form I485) are adjudicated by the BCIS." A.R.61. The motion went unopposed, and, on November 7, 2003, the BIA "grant[ed] the

motion to reopen and remand[ed] the case for further proceedings." A.R.56.

In the reopened proceedings, Mr. Potdar's counsel charted a new course. Instead of arguing in support of a stay to allow the processing of his application for adjustment by the District Director, he "renew[ed]" the motion that he had made before the prior IJ "to dismiss the charges of excludability having been charged against him and terminate the instant exclusion proceedings." A.R.19. Armed with documents that could not be located during his initial proceedings, specifically his grant of advance parole, Mr. Potdar requested that "the instant proceedings in Exclusion be terminated and the applicants [sic] admission as a parolee be reinstated pending adjudication of his Legalization application or any other application for status pending with the [United States Citizenship and Immigration Services ("USCIS")] office." *Id.* at 20. The Government responded that, because the District Director had "revoked the applicant's advance parole," he "was properly placed into exclusion proceedings." A.R.12. The Government, therefore, requested that the motion to terminate be denied.

In considering the parties' filings, the IJ mistakenly characterized Mr. Potdar's motion to reopen as "requesting Adjustment of Status." A.R.5. The immigration court determined that it did not have authority to consider such a request and certified the record to the Board sua sponte, posing the following questions: "(1) [W]as the grant of the applicant's motion for adjustment appropriate; (2) Is the denial of Adjustment of Status is [sic] warranted as a matter of law." A.R.6. The IJ

entered this order on July 8, 2005. Thereafter, Mr. Potdar did not seek to apprise either the IJ or the Board that the IJ had misunderstood his request.

Over eight months later, the Board considered the certified record and questions. It accepted the IJ's characterization of Mr. Potdar's August 25, 2003 filing as "seeking an opportunity to apply for adjustment of status." A.R.2. The Board agreed with the IJ that he lacked authority to grant adjustment of status in exclusion proceedings. It therefore vacated its prior decision and denied the motion to reopen.

## 2. Petition for Review

Mr. Potdar petitioned for review. Before this court, Mr. Potdar raised a myriad of issues challenging the IJ's failure to grant the motion to terminate and challenging aspects of the Board's initial determination of excludability[2]—a determination for which Mr. Potdar had

---

[2] Specifically, as set forth in Mr. Potdar's opening brief, the "ISSUES PRESENTED FOR REVIEW" were:

    I.   Whether or not this court has jurisdiction under the REAL ID Act to consider whether the Board acted arbitrarily in refusing to terminate exclusion proceedings.

    II.   Whether or not Petitioner has presented substantial legal questions that are within this courts jurisdiction to review under the REAL ID Act.

        A. Whether or not the Board correctly concluded that Petitioner was "an arriving alien."

(continued...)

not sought review. However, Mr. Potdar did not raise as a separate issue the fact that the Board misconstrued the nature and purpose of his motion to reopen.[3]

In response, the Government argued that the issues resolved by the Board's April 2003 order were not properly before the court. Instead, the Government maintained that our review should be limited to issues presented by the denial of the motion to reopen. The Government went on to argue that the Board was correct that it did not have jurisdiction to consider an application for adjustment of status by an arriving alien and that Mr. Potdar fell within that category.

---

[2] (...continued)

       B. Whether or not the Board erred in failing to order Petitioner's admission as a legalization application nunc pro tunc to August 10, 1996.

    III. Whether or not the Board erred in refusing to recognize the significance of the advance parole document that Petitioner was unable to present in the original proceedings.

    IV. Whether or not the Board's conclusion that it lacked jurisdiction to consider Petitioner's application for adjustment of status filed under § 245(i) was erroneous as a matter of law.

    V. Whether or not the Petitioner was given an opportunity to present evidence to rebut the exclusion charge lodge under § 212(a)(7)(A)(i)(I).

Petitioner's Br. 2.

[3] Mr. Potdar mentions the IJ's misconception in passing, but only as support for other arguments. *See* Reply Br. 6.

After considering the parties' submissions, we agreed with the Government that "the Board's order reopening the case did not resurrect jurisdiction over the issues underlying the initial exclusion order." *Potdar I*, 505 F.3d at 683. We therefore could not consider any of the substantive challenges made to the initial exclusion order. However, we did not end our analysis there. Despite only vague references in Mr. Potdar's briefs to the IJ's mistake in construing the motion to reopen as one seeking substantive relief, we did recognize that the IJ had "misapprehended the Board's order reopening proceedings" and further recognized that the Board had failed to correct the error when the IJ certified the record back to the Board. *See Potdar I*, 505 F.3d at 684. Nevertheless, because Mr. Potdar essentially was requesting a continuance and because the grant of a continuance was discretionary, we held that, after our decision in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007), we did not have jurisdiction to review the denial of this request.

### 3. Petition for Rehearing

Mr. Potdar then petitioned for rehearing. While acknowledging that *Ali* generally barred review of the denial of motions to continue, Mr. Potdar noted that *Ali* also had preserved an exception, set forth in *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004), to the jurisdictional bar. *Subhan* preceded *Ali* and held that, even assuming that 8 U.S.C. § 1252(a)(2)(B)(ii) "*generally* bars judicial review of a continuance granted by an immigration judge in a removal proceeding," Congress did not intend "to entitle

illegal aliens to seek an adjustment of status upon the receipt of certificates from the state and federal labor departments" and "at the same time also intend[] section 1252(a)(2)(B)(ii) to place beyond judicial review decisions by the immigration authorities that nullif[y] the statute." *Subhan*, 383 F.3d at 595. In *Subhan*, we concluded that the BIA violated 8 U.S.C. § 1255 when it denied a petitioner's motion to continue for purposes of seeking an adjustment of status "without giving a reason consistent with the statute, indeed without giving any reason." *Id.* Under such circumstances, appellate review was permissible. When we issued our opinion in *Ali*, which decided the jurisdictional issue that *Subhan* had assumed *arguendo*, we preserved the "exception noted in *Subhan*." 502 F.3d at 664.

*Ali* was issued in September 2007, a month before our opinion in *Potdar I*. Consequently, neither party had had the opportunity to comment on *Ali*'s applicability before we invoked its holding to dismiss Mr. Potdar's petition. As a corollary, neither party had had the opportunity to address whether the *Subhan* exception to the general rule articulated in *Ali* applied to Mr. Potdar's application for relief. Because, at least at first blush, Mr. Potdar's request could have fallen within the *Subhan* exception, we granted panel rehearing and asked the parties to brief this issue.

### 4. Supplemental Briefing

In response to this request, Mr. Potdar and the Government filed supplemental briefs addressing whether

Mr. Potdar's motion to continue fell within the *Subhan* exception. Mr. Potdar argued, inter alia,[4] that his case fell "squarely within *Subhan*, where an arbitrary and clearly erroneous misinterpretation of Petitioner's motion to continue exclusion proceedings prevents Petitioner from obtaining an adjudication of his application for adjustment of status for USCIS." Petitioner's Supp. Br. 4. For its part, the Government argued that Mr. Potdar's case did not fall within the exception set forth in *Subhan* for several reasons.[5] First, the Government argued, "Potdar did not request a continuance before the agency, but rather, he moved the agency to terminate his proceedings, a distinctly different procedural request." Government's Supp. Br. 9. The Government recounted, as we have above, the various opportunities that Mr. Potdar had to correct the IJ's and the BIA's characterization of Mr. Potdar's request, as one seeking a continuance as opposed to more substantive relief. The Government noted that it was "[m]ost telling" that "in briefing before this Court, Potdar did not assert that he requested a continuance before the IJ or that the IJ should have considered his request as such and thus continued the pro-

---

[4] Mr. Potdar also criticized this court's decision in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007). *See* Petitioner's Supp. Br. 10-14.

[5] The Government, like Mr. Potdar, urged the court to reconsider its decision in *Ali* as "inconsistent with the relevant statutory language[] and . . . contrary to the overwhelming weight of precedent from other circuits." Government's Supp. Br. 8 n.3.

ceedings." *Id.* at 11. The Government also argued that *Subhan* did not apply because Mr. Potdar's "statutory right to apply for adjustment of status was not nullified by the agency's action," *id.* at 13; according to the Government, "Potdar's application was pending at the [USCIS] at the time he requested termination in immigration court, and it remained pending at USCIS after the Board's vacatur of its reopening order," *id.* at 14. Finally, the Government observed that "subsequent events further support the conclusion that Potdar's statutory right to seek adjustment of status was not nullified." *Id.* at 15. Specifically, the Government noted that Mr. Potdar's application had proceeded through the administrative process and ultimately had been denied. The Government acknowledged that these documents were not part of the administrative record, but requested that we "take judicial notice of their effect on whether the *Subhan* exception applies to Potdar's claims." *Id.*

On rehearing, we declined both parties' invitation to revisit the holding in *Ali* as "outside the scope of the grant of rehearing by this panel." *Potdar II*, 550 F.3d at 597. We also determined that the Government's argument that Mr. Potdar did not fall within *Subhan* because he had not requested explicitly a continuance was foreclosed by our prior decision. We rejected the Government's argument that Mr. Potdar was not in "jeopardy of imminent removal after the Board entered its final exclusion order," Respondent's Supp. Br. 14, noting that "the only reason that Mr. Potdar was not deported was that, on November 3, 2006, this court issued a stay of

removal pending resolution of his appeal." *Potdar II*, 550 F.3d at 597. However, we did observe that there was some merit to the Government's contention that Mr. Potdar was not prejudiced by the IJ's denial of the continuance:

> The Government explains that Mr. Potdar sought a continuance to allow his adjustment of status application to be processed.
>
> The basis of Mr. Potdar's continuation request before the BIA was to allow time for adjudication of his legalization and other applications then pending with the Department of Homeland Security. If, therefore, Mr. Potdar's applications all have been considered and rejected, it would appear that our involvement in the case is at an end. However, the Government neither has provided us with the documentation substantiating its assertion, nor has it provided us with authority supporting an appellate court's use of judicial notice in a similar situation. Consequently, we believe the best course is to remand the matter to the BIA. The BIA is in a better position to evaluate the subsequent administrative actions, to determine whether Mr. Potdar's applications for substantive relief have been considered and denied and, in the first instance, to determine the appropriate disposition of this administrative proceeding if those applications have been denied.

*Id.* at 597-98 (internal citations omitted).

## C.

Having reviewed the record as a whole, we now consider whether the Government's position was substantially justified. Throughout this litigation, we have been critical only of three actions taken and arguments made by the Government. *See Golembiewski*, 382 F.3d at 724 (observing that "[s]trong language against the government's position in an opinion assessing the merits of a key issue is evidence in support of an award of EAJA fees"). The first was the IJ's, and later the BIA's, misapprehension of the relief Mr. Potdar was seeking. *See Potdar I*, 505 F.3d at 684 (noting that "the approach [the IJ] took to the case was not responsive to the inquiry the Board had placed before him in granting Mr. Potdar's motion to reopen the proceedings").[6] This confusion, however, was precipitated by Mr. Potdar's newly retained counsel.[7] Once the motion to reopen was granted, Mr. Potdar's counsel abandoned the argument that proceedings should be stayed to allow Mr. Potdar's applications for relief to be processed by the District Director and, instead, argued that the exclusion proceedings should be terminated. The IJ mistakenly believed that, given the procedural posture of the case and the applica-

---

[6] We again emphasize that this case does not require us to determine whether the underlying BIA decision is an aspect of the Government's litigation position for purposes of the EAJA. *See supra* note 1.

[7] That attorney is not the same counsel currently representing Mr. Potdar before the court.

tion of the law of the case doctrine, Mr. Potdar was seeking adjustment of status in the immigration court. The IJ therefore certified the record to the BIA for further guidance. Although Mr. Potdar's counsel had notice of the IJ's action, and despite the fact that eight months elapsed before the BIA acted on the IJ's certification, Mr. Potdar's counsel did nothing to correct the IJ's misconception. Thus, although we faulted the BIA in *Potdar I* for failing to correct the IJ's error, *see Potdar I*, 505 F.3d at 684, in light of counsel's renewed efforts to terminate exclusion proceedings and concomitant failure either to dispel the IJ's misconception of Mr. Potdar's motion or to clarify Mr. Potdar's intent, we cannot conclude that the BIA's conclusion was unjustified. *Cf. Kholyavskiy*, 561 F.3d at 691 ("Similarly, the fact that we found that part of the BIA's determination was not supported 'by substantial evidence does not foreclose the possibility that the position was substantially justified.'" (quoting *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004))).[8]

Our only other two criticisms of the Government's position were in response to arguments made in its sup-

---

[8] For the same reason, we believe the Government's defense of the BIA's action was substantially justified. Mr. Potdar faults the Government for defending the BIA's error and not recognizing "that the record clearly reflects that Potdar's motion initially requested reopening to stay the exclusion proceedings." Petitioner's Reply (Attorneys' Fees) at 1. However, whether he recognized the error or not, even Mr. Potdar did not raise the BIA's mischaracterization as an independent ground for relief in his opening brief.

plemental filing. We stated in *Potdar II* that we could not accept the Government's arguments that *Subhan* did not apply because Mr. Potdar was not "in jeopardy of imminent removal," 550 F.3d at 597; we observed that, absent the stay of removal that we had issued, Mr. Potdar already would have been removed from the United States. Additionally, we held that we could not deem Mr. Potdar's appeal moot based on the Government's representation in its brief that Mr. Potdar's applications for relief had been adjudicated. We acknowledged that, if "Mr. Potdar's applications all have been considered and rejected, it would appear that our involvement is at an end." *Id.* at 598. However, we could not reach that conclusion without either further documentation or authority for the proposition that we could take judicial notice of such events. *See id.*

The presence of these arguments does not render the Government's approach, as a whole, unreasonable. Although we do not believe that there is any merit to the Government's claim that Mr. Potdar was not in imminent danger of removal, this argument was only one of many propounded by the Government in its supplemental filing. In light of the entire record, we do not believe that this one argument supplies a sufficient taint to render the Government's position unjustified. *See Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) (observing that "a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation" might not render the Government's position unreasonable).

Furthermore, the Government's argument with respect to the mootness of Mr. Potdar's administrative applications was relevant to the inquiry before the court. Specifically, it addressed the question of whether the denial of the continuance affected Mr. Potdar's substantive rights and, therefore, placed him within the exception to the jurisdictional bar carved out by *Subhan*. With respect to this argument, we did not reject it because it was meritless, but because the Government's presentation was incomplete. Without additional documentation, we could not reach the conclusion that Mr. Potdar's applications had been completely and finally adjudicated.

## Conclusion

Although we have determined that the Government's response to certain events in this record were incorrect, we believe that, given the factual scenario in which they arose, its response was nonetheless a reasonable one. Our review of the entire record leads us to believe that the Government's position was "justified in substance or in the main." *Pierce*, 487 U.S. at 565. Therefore, the fee petition is denied.

PETITION DENIED