In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3197

FRANCIS GATIMI, *et al.*,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General of the
United States,

*Respondent.*

Petition to Review an Order of the
Board of Immigration Appeals.
Nos. A96-495-092 to -094

On Motion for an Award of Attorneys' Fees and Costs

MAY 17, 2010

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* In a previous opinion we granted
the petition for review filed by Francis Gatimi and his
wife and daughter and remanded the case to the Board
of Immigration Appeals. *Gatimi v. Holder*, 578 F.3d 611
(7th Cir. 2009). The Gatimis now seek an award of

attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), which directs a court to award a prevailing party in a litigation with the United States, "including proceedings for judicial review of agency action," his attorneys' fees and other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.*; see *Potdar v. Holder*, 585 F.3d 317, 319 (7th Cir. 2009). "The case must have sufficient merit to negate an inference that the government was coming down on its small opponent in a careless and oppressive fashion." *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381-82 (7th Cir. 2010).

We reversed the Board of Immigration Appeals on both issues presented by the petition for review: we rejected the Board's ruling that the petitioners had to show that their "social group" was "socially visible" and we held that Mrs. Gatimi's fear of female genital mutilation was supported by the record and relevant to the asylum claim. The petitioners point to the "strong language" in our opinion, see *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004), to our characterization of the immigration judge's determination that Mr. Gatimi did not suffer persecution as "absurd," and to our statement that the immigration judge's position on Mrs. Gatimi's fear of female genital mutilation "lapsed into incoherence."

Until today we've found it unnecessary to decide whether in immigration cases the "position of the United States" as that phrase is used in the Equal Access to Justice Act denotes only the position taken by the government

in judicial review proceedings or whether it also includes the underlying decision by the agency—namely the Board of Immigration Appeals—of which judicial review is sought. *Kholyavskiy v. Holder*, 561 F.3d 689, 691 n. 3 (7th Cir. 2009); *Potdar v. Holder*, *supra*, 585 F.3d at 319 n. 1; *Tchemkou v. Mukasey*, 517 F.3d 506, 509 n. 1 (7th Cir. 2008). The issue is inescapable in this case.

Each of the three courts of appeals to have considered the question has held that the position of the United States *does* include the Board's decision. *Thangaraja v. Gonzales*, 428 F.3d 870, 873-74 (9th Cir. 2005); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 545 (3d Cir. 2001); *Barwari v. Mukasey*, 282 Fed. Appx. 896, 897-98 (2d Cir. 2008) (per curiam). (Only the first two decisions are precedential, however.) The Act itself says that the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); see *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994); *Cummings v. Sullivan*, 950 F.2d 492, 497 (7th Cir. 1991); *Hardisty v. Astrue*, 592 F.3d 1072, 1076-77 (9th Cir. 2010); *Hackett v. Barnhart*, 475 F.3d 1166, 1170 (10th Cir. 2007); *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004); *McDonald v. Secretary of HHS*, 884 F.2d 1468, 1475-76 (1st Cir. 1989). The *Chenery* doctrine binds the government's lawyers in judicial review proceedings to the grounds of the agency's decision, *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Benitez Ramos v. Holder*, 589 F.3d 426, 430 (7th Cir. 2009), so that unless they confess error on the agency any lack of substantial

justification in the grounds they advance is due to the agency; the agency, not the appellate lawyers, thus determines the "position of the United States." (Nor do the government lawyers argue otherwise.) Neither in this regard, nor in any other that occurs to us, is there any difference between immigration cases and other agency cases.

The Board affirmed the immigration judge's holding that defectors from Mungiki, the group in which Mr. Gatimi claimed membership, were not a "particular social group" for asylum purposes, because of the group's lack of "social visibility." The immigration judge had further held that Mr. Gatimi had not proved persecution—that his kidnapping and torture were merely mistreatment. That was the ruling we had called "absurd." But the Board had not affirmed it and the government's lawyer did not rely on it in this court; and the mistake of a subordinate agency official is not automatically the "position of the United States." Of course "fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa." *Marcus v. Shalala,* 17 F.3d 1033, 1036 (7th Cir. 1994). The fact that the government has a substantially justified basis for arguing that the agency's decision was substantially justified doesn't make the agency's decision substantially justified. *Hackett v. Barnhart, supra,* 475 F.3d at 1174; *Thangaraja v. Gonzales, supra,* 428 F.3d at 875-76 n. 1 (9th Cir. 2005). (This result is implicit in the Supreme Court's decision in *Commissioner v. Jean*, discussed later in this opinion.)

But that is not this case. The Board wasn't defending an untenable ruling by the immigration judge, but rejecting it. The immigration judge's ruling was only an element of the overall position of the United States—more precisely perhaps, a stumble on the way to the formulation of that position—because the Board and the government's lawyer rejected it. It is not an adequate basis for an award of fees.

We rejected the Board's use of "social visibility" to determine membership in a social group because it was inconsistent with the Board's basic test for a social group, and with our decisions. But although we thus rejected the government's position on that issue, it was, we think, substantially justified. "[U]ncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position." *Kholyavskiy v. Holder*, *supra*, 561 F.3d at 691, quoting *Marcus v. Shalala*, *supra*, 17 F.3d at 1037. We hadn't previously addressed the Board's use of the social-visibility criterion for membership in a social group. And our opinion acknowledged that five other circuits had approved that use. That brings this case within the scope of cases such as *Krecioch v. United States*, 316 F.3d 684, 689 (7th Cir. 2003), which found the government's position substantially justified in part because it was "supported by precedent from other federal circuits." See *Holland v. Williams Mountain Coal Co.*, 496 F.3d 670, 676-77 (D.C. Cir. 2007); *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1178, (D.C. Cir. 2005); *Koch v. Dept. of Interior*, 47 F.3d 1015, 1021 (10th Cir. 1995); *Younger v. Secretary of HHS*, 910 F.2d 319, 321 (6th Cir. 1990) (per curiam).

But the qualification "in part" needs to be underscored. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1261 (9th Cir. 2001), holds sensibly that if the government's position is unreasonable, an award of fees cannot be withheld even if the case is novel. The fact that a legal question has never arisen before doesn't mean that it *must* be a question to which reasonable people could give different answers. Maybe the question didn't arise because the answer was obvious.

The immigration judge dismissed as lacking an objective basis Mrs. Gatimi's fears of being subjected to female genital mutilation if returned to Kenya. The government's lawyer in this court went further, arguing that because Mrs. Gatimi had not applied for asylum herself the only basis on which she could obtain asylum was persecution of her husband. We rejected each variant of the government's position. The immigration judge's discussion of the claim had "lapsed into incoherence." 578 F.3d at 614. And contrary to the Board's statement in affirming the immigration judge that there was no evidence to support the claim, we cited evidence that the "Mungiki will track Mrs. Gatimi down and subject her to the procedure and that the Kenyan police will not interfere." *Id*. at 618.

We explained that persecution of Mrs. Gatimi can constitute persecution of Mr. Gatimi, and so her fear of persecution is relevant to his (and therefore their) claim for asylum. "Genital mutilation of one's wife, unless one happens to be a supporter of the practice, is a way to punish one, and so the menace to Mrs. Gatimi is a legitimate

component of Mr. Gatimi's case." *Id.* at 617. The government relied on cases holding that a petitioner is not eligible for asylum because of fear of her child's being subjected to female genital mutilation upon removal. *Olowo v. Ashcroft*, 368 F.3d 692, 701 (7th Cir. 2004); *Oforji v. Ashcroft*, 354 F.3d 609, 616 (7th Cir. 2003); *In re A-K-*, 24 I. & N. Dec. 275, 277 (BIA 2007). But in those cases the children had one parent with legal status and so were not subject to removal. Mrs. Gatimi was subject to removal with Mr. Gatimi, so there was no possibility of her remaining in the United States and thus avoiding the risk of being subjected to female genital mutilation. The government had no legal or factual support for its position at any level of the proceedings.

Thus of the two issues in this case the government's position was substantially justified with respect to only one. Although we can imagine trying to allocate fees across issues in such a case, we can't find a case in which that's been done. The cases just ask whether the government's position was substantially justified as a whole, *Potdar v. Holder*, *supra*, 585 F.3d at 325-26; *Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002) (per curiam); *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139-40 (4th Cir. 1993*)*, and if it is they deny any award of fees. The provision authorizing the district court, "in its discretion," to "reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy," 28 U.S.C. § 2412(d)(1)(C),

presupposes an entitlement to *some* award of fees under the Act, and the question in this case is whether there is such an entitlement.

The Supreme Court said in *Commissioner v. Jean*, 496 U.S. 154, 161-62 (1990), that "while the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." This statement has persuaded a number of courts that "substantial justification" (except in cases in which the party seeking fees "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy") is all or nothing: no fee can be awarded even though the government imposed needless expense on its opponent by making meritless arguments, provided that its position as a whole was substantially justified. *United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003); *Gutierrez v. Barnhart*, *supra*, 274 F.3d at 1258-59; *Roanoke River Basin Ass'n v. Hudson*, *supra*, 991 F.2d at 139. Yet the issue in *Commissioner v. Jean* was not allocation; it was whether the government could resist an award on the ground that although its position in the underlying case had not been substantially justified, its opposition to the application for fees had been substantially justified; the Court rejected this defense. As we said earlier, the fact that there is a substantial justification for arguing that the government's position was substantially justified doesn't make that position substantially justified. A criminal lawyer may be substantially justified in pressing an appeal for his client,

rather than filing an *Anders* brief and by doing so acknowledging that there is no nonfrivolous ground for appeal; but that doesn't mean his client is innocent.

*United States v. Rubin*, 97 F.3d 373, 375 (9th Cir. 1996), says that in cases under the Equal Access to Justice Act "there may well be situations in which the government is justified initially but its subsequent unjustified actions merit an award of attorney's fees *for the unjustified portion of the conduct*" (emphasis added). Such adjustments are of course the norm under other fee-shifting statutes, e.g., *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1933), and the Supreme Court in *Commissioner v. Jean* relied on *Hensley* and other cases under fee-shifting statutes other than the Equal Access to Justice Act for help in interpreting that Act. 496 U.S. at 161-62.

It is perilous to take judicial language out of context. *Commissioner v. Jean* does not address the question whether allocation is permissible under the Equal Access to Justice Act, thus allowing an award of fees for the part of the government's case that was not substantially justified. The question merits further consideration. It is not obvious that if the government loses after advancing two good grounds and one bad one its opponent should get nothing but if the government loses after advancing one good ground and two bad ones its opponent should get 100 percent of the fees he incurred (provided they were reasonable in amount and he hadn't unduly protracted the litigation). Against this it can be argued that to attempt such an allocation would be cutting things too fine and would be in tension with the rule that waivers of

sovereign immunity should be narrowly construed. E.g., *McMahon v. United States*, 342 U.S. 25, 27 (1951).

This is not the case in which to try to resolve the issue. The Gatimis are not asking for an allocation. They want all or nothing. The social-divisibility issue was the more prominent issue and the government's position on that issue was justified, and we therefore conclude that the government's position was substantially justified as a whole, and on that basis we deny the motion for attorneys' fees.

The petitioners' request for an award of costs, to which we now turn, was untimely. Rule 39(d)(1) of the Federal Rules of Appellate Procedure provides that "a party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk, with proof of service, an itemized and verified bill of costs." The petitioners ask us to treat "entry of judgment" in Rule 39 as the Equal Access to Justice Act treats "final judgment": a motion for attorney's fees must be filed "within thirty days of final judgment," defined as a judgment "that is final and not appealable." 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G). But "entry of judgment" is not the same thing as "final judgment." Rule 36 says that "a judgment is entered when it is noted on the docket." Fed. R. App. P. 36(a). The judgment in this appeal was entered on August 20; the petitioners' motion for costs was filed 92 days later.

Nor have the petitioners shown "good cause" for our extending the deadline. Fed. R. App. P. 26(b). They say their tardiness was due not to dilatory conduct but to a reasonable belief that judgment had not been entered.

The belief was not reasonable. Rule 36 is explicit that "judgment is entered when it is noted on the docket."

The motion for attorneys' fees and costs is DENIED.