**Temesgen Woldu HAILE, Petitioner,**

v.

**Eric H. HOLDER, Attorney General of the United States, Respondent.**

No. 08–4187.

United States Court of Appeals, Seventh Circuit.

June 16, 2010.

David Garfield, Catherine A. Reynolds, Attorney, Law Office of David Garfield, Washington, DC, for Petitioner.

Corey L. Farrell, Attorney, Department of Justice, Washington, DC, for Respondent.

Before RICHARD A. POSNER, Circuit Judge, MICHAEL S. KANNE, Circuit Judge and ILANA DIAMOND ROVNER, Circuit Judge.

**ORDER**

In a previous opinion we granted the petition for review filed by Temesgen Woldu Haile and remanded the case—for the second time—to the Board of Immigration Appeals. *Haile v. Holder*, 591

F.3d 572 (7th Cir.2010) *(Haile II)*. Haile now seeks an award of attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), which directs a court to award a prevailing party in a litigation with the United States his attorneys' fees and other expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.*; *see Gatimi v. Holder*, 606 F.3d 344, 346–47 (7th Cir.2010). The government opposes the motion and argues that its position *was* substantially justified. We disagree, and accordingly grant Haile's motion.

In support of the government's contention that its position was substantially justified, the government first asserts that the issue presented by the case—whether divestment of citizenship based on ethnicity constitutes persecution—was complex and novel, which weighs in its favor. *See, e.g., Kholyavskiy v. Holder*, 561 F.3d 689, 691 (7th Cir.2009). The government acknowledges that in *Gatimi*, 606 F.3d at 347–48, we explained that a novel question may have an obvious answer that makes the government's position untenable, but the government contends that our decision in the first Haile case, *Haile v. Gonzales*, 421 F.3d 493 (7th Cir.2005) *(Haile I)*, makes it clear that the answer here was *not* obvious. In *Haile I* we concluded that we were "not yet able to say" whether denationalization is per se persecution and acknowledged that "[t]he meaning of 'persecution' in immigration law remains ill-defined," so we remanded the case to the Board for "additional factual findings and legal consideration." *Id.* at 496–97. But our reluctance to answer the question stemmed more from the "primary responsibility" of the Board to act in the first instance and the incomplete record. *Id.* It is also worth noting that the government did not litigate the case as though it involved a novel issue, but instead insisted that *Faddoul v. INS*, 37 F.3d 185 (5th Cir.1994), and *De Souza v. INS*, 999 F.2d 1156 (7th Cir.1993), which deal with a sovereign's right to deny or bestow citizenship, provided on-point precedent.

Second, the government maintains that the BIA's decision on initial remand wasn't contrary to *Haile I*, as the Board recognized that it was supposed to consider whether divestment of citizenship is per se persecution and concluded that it is not. Although the Board *recognized* the question it was supposed to answer on remand, as a member of the panel pointed out at oral argument for *Haile II*, the Board's decision "skirted the issue."

The government further argues that its position was substantially justified despite our disagreement with the Board's conclusion that stripping Haile of his citizenship did not amount to persecution, because we *agreed* in *Haile II* with the Board's premise that not *all* denationalizations amount to persecution. 591 F.3d at 573–74. According to the government, the Board "fully explained its reasoning," so our disagreement with the Board's conclusion does not mean that its decision was without rational basis. The government's argument ignores our repudiation of the Board's reasoning in *Haile II*, where we determined that the Board's analogy to instances in which altered boundaries change an individual's citizenship was inapt: in such situations the individual does not become stateless, and statelessness as a result of ethnicity was the basis of Haile's asylum claim. *Id.* at 573. Moreover, far from agreeing that the Board's decision was "fully" reasoned, we concluded that the Board had *"leapt to the conclusion* that even if a person loses his citizenship because of a 'protected ground' … such a loss of citizenship does not, without more, amount to persecution" and scolded that "unlike a jury an administrative agen-

cy has to provide a reasoned justification for its rulings." *Id.* at 573–74 (emphasis added).

The government also argues that its position was substantially justified because our disagreement with the Board over Haile's ability to reclaim his citizenship stemmed from unclear evidence in the record. Some of the record evidence was open to multiple interpretations, but much of the evidence was unsettled because the Board ducked its responsibility to try to resolve important issues, like the status of a minor who is an Ethiopian citizen by virtue of his parents' citizenship when the parents renounce their citizenship. *Id.* at 574. And for some of the evidence on which we split with the Board, such as the applicability of the 2003 proclamation, the Board's view is not just different but also arguably unreasonable. The Board and the government assumed that Haile would at least be eligible to be considered for citizenship under the 2003 readmission law, but, as we pointed out, by its terms the law only applies to former Ethiopian nationals who acquired foreign nationality, and Haile did not. *Id.* at 575.

Finally, the government emphasizes that in *Haile I* we did not find fault with the IJ's determinations that Haile did not suffer individual persecution or have a well-founded fear of future persecution, and in *Haile II* we did not address Haile's argument that the Board erred by failing to address his humanitarian asylum claim, and so, the government contends, these aspects of its position were substantially justified. Those findings were not the central focus of the litigation. In *Gatimi* we denied a motion for attorneys' fees and costs, despite determining that the government's position was substantially justified with respect to only one of the two issues in the case, because the government's position was substantially justified for the "more prominent issue." 606 F.3d at 350.

Here, by contrast, the most prominent issue was whether being made stateless is persecution, so our stated or silent agreement with the government on other questions does not carry much weight in the substantial-justification calculus.

We are unpersuaded by the government's arguments that its position was substantially justified. It is also worth recalling that at oral argument for *Haile II* the government's lawyer took the position that it would not have been persecution for the United States to strip Muslim citizens of their citizenship post–9/11 if they were allowed to remain in the U.S. We expressed skepticism that this was actually the Board's position, 591 F.3d at 574, but it was not far removed from the "denationalization plus" rule articulated by the Board on remand. In light of the lack of substantial justification for the government's position, Haile should be awarded attorneys' fees and costs under the EAJA.

■ Although we agree with Haile that he deserves an award, he is not entitled to an award in the amount he requests. Haile is asking for $46,527.50, of which $43,349.34 is attorneys' fees and $3,178.16 is costs. We reject the government's argument that Haile should not receive a cost-of-living increase beyond the $125 statutory hourly rate for attorneys' fees. Haile's attorneys have justified their requested increase by submitting extensive documentation of standard billing rates and their experience and qualifications. *See Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir.2004). We also disagree that the hours billed include duplicative work. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511–12 (7th Cir.2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel."). The government further argues that Haile is improperly requesting reimbursement for "nonlegal work," but the tasks the

government objects to, though somewhat menial, still involve the exercise of legal judgment.

The government is correct, however, that Haile is seeking costs for which he has largely already been paid and at rates in excess of what is permitted. Haile has deducted from his total requested costs the $1,604.60 that he received as a result of the bill of costs that he timely submitted following the resolution of his petition, but the invoice that he has attached to justify $4,000.26 in "brief/appendix charges" is the same invoice that he submitted with the bill of costs and for which he was reimbursed already. In his bill of costs he recalculated the amounts charged so that they were in line with the accepted rates, i.e., $0.10 per page for copies instead of $0.25, but now he has submitted the invoice as is. Haile also requests $450 in "docketing fees," but his bill of costs award included those fees. Haile cannot recover twice for the same expenses. He is also seeking "other printing/copying expenses" in the amount of $212.50, which represents 850 pages at the unacceptable rate of $0.25 per page. We reduce this amount to $85, which reimburses him at the $0.10 per page rate established by the clerk of the court.

For the reasons set forth above, we grant Haile's motion for fees and costs. The government shall reimburse Haile for $43,349.34 in attorneys' fees and $205 in costs.