T.C. Memo. 2021-90

UNITED STATES TAX COURT

JESSE C. MORREALE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24762-17.                          Filed July 15, 2021.

David A. Sprecace, for petitioner.

Ray Malone Camp and Tamara L. Kotzker, for respondent.

MEMORANDUM OPINION

MARVEL, Judge:  This case is before us on petitioner's motion for

reasonable litigation and administrative costs under section 7430, filed February

28, 2019.[1]  On May 15, 2019, respondent filed his response in opposition to

_____

[1]Unless otherwise indicated, all section references are to the Internal
(continued...)

[*2] petitioner's motion on the grounds that (1) the position of the United States was substantially justified,[2] and (2) the fees petitioner claims in his motion are not reasonable.

Background

Petitioner is a hotelier and restaurateur who operated various related businesses in Denver, Colorado, in tax years 2011 and 2012. Specifically, petitioner owned Morreale Hotels, LLC (Hotel LLC); Hotel Restaurant, LLC d.b.a. Rockbar; and Sketch Restaurants, LLC (Sketch). Sketch operated two restaurants in Denver, both of which leased space from Hotel LLC.

I.    Petitioner's Bankruptcy Proceeding and Resulting Administrative Proceeding

Petitioner failed to timely file income tax returns for tax years 2011 and 2012. On October 15, 2013, petitioner filed for bankruptcy in the U.S. Bankruptcy Court for the District of Colorado. The Commissioner's bankruptcy specialists

---

[1](...continued)
Revenue Code as in effect for the appropriate years, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar.

[2]Respondent has conceded that petitioner is otherwise a prevailing party within the meaning of sec. 7430. Specifically, respondent concedes that petitioner has prevailed with respect to the amount in controversy, did not unreasonably protract the proceedings, has exhausted his administrative remedies, and meets the net worth requirements of sec. 7430(c)(4)(A)(ii).

**[*3]** referred petitioner's case to the Examination Division on January 5, 2016, to assist in the preparation and filing of substitutes for returns for the 2011 and 2012 tax years. Upon referral, Revenue Agent Robert Taurchini (RA Taurchini) was assigned to petitioner's case. RA Taurchini's examination initially covered tax years 2010 through 2014.

Petitioner and his representative first met with RA Taurchini on February 19, 2016. In that meeting, petitioner agreed to prepare the delinquent income tax returns for himself and his businesses. On March 8, 2016, RA Taurchini met with petitioner's bankruptcy trustee (trustee). The trustee provided additional documentation relating to petitioner. RA Taurchini used the trustee's documentation, in addition to information provided by petitioner and his representative, in his initial consideration of proposed adjustments for petitioner's tax years 2011 and 2012.

On April 4, 2016, petitioner submitted delinquent Forms 1040, U.S. Individual Income Tax Return, to RA Taurchini for tax years 2011 and 2012. RA Taurchini in turn submitted these returns for processing to the Internal Revenue Service (IRS) Fresno, California, Service Center on April 7 and 8, 2016, respectively. After reviewing the information on these returns and comparing it with the profit and loss statements relating to petitioner's businesses already in his

**[*4]** possession, RA Taurchini prepared a set of examination lead sheets outlining the proposed adjustments and the underlying calculations.  He provided petitioner and his representative copies of those lead sheets on June 2, 2016, and discussed them at a June 14, 2016, meeting.  On June 29, 2016, Sketch filed a delinquent Form 1065, U.S. Return of Partnership Income, for tax year 2012.

The lead sheets shared with petitioner and his counsel revealed at least two primary issues in dispute:  (1) whether petitioner had failed to substantiate any basis in Sketch and (2) whether petitioner was improperly reporting on the accrual basis and should be switched to the cash basis, with the result that deductions claimed as accrued but not paid should be disallowed.

To attempt to substantiate his basis in Sketch, petitioner had his accountant email a "full basis calculation for Sketch LLC from the opening of the restaurant" to RA Taurchini on July 13, 2016.  Petitioner's accountant attached a spreadsheet, which provided a detailed summary of petitioner's basis in Sketch for tax years 2006 through 2010.  The record does not indicate that RA Taurchini responded to this email or considered the calculations set out in the attached spreadsheet.[3]

---

[3]It appears that RA Taurchini may have received but failed to review the email during the course of the examination, but the record is insufficient to make a finding of fact to this effect.  In particular, in his motion for costs and in other documents in the administrative record, petitioner contends that the Government

(continued...)

[*5]   In response to RA Taurchini's contention that petitioner's businesses should have reported on a cash basis, petitioner's counsel provided financial statements that purported to show petitioner's consistent use of the accrual method. Additionally, petitioner's counsel argued that petitioner's businesses must use the accrual method by operation of section 1.446-1(c)(2)(i), Income Tax Regs., which requires businesses that carry inventory to use the accrual method of accounting. RA Taurchini rejected these arguments and, instead, determined that petitioner should have used the cash basis method of accounting. He based this determination on a single third-party contact discussion with petitioner's former return preparer who stated that he recalled preparing petitioner's returns on the cash basis. Notably, however, in his lead sheets and eventually in his report, RA Taurchini adjusted petitioner's beginning and ending inventories relating to

---

<sup>3</sup>(...continued)
produced the email in the course of discovery in his bankruptcy proceeding, confirming that RA Taurchini in fact received the email. Petitioner further contends that, in a deposition taken during his bankruptcy proceeding, RA Taurchini stated that he did not recall seeing the email or the attached spreadsheets. Although this testimony is described in the record and, indeed, as discussed infra, the IRS Office of Appeals relied upon this email to find that the documentation petitioner provided relating to his basis in Sketch "was sufficient", the transcript of the testimony is not in the record before us, so we cannot find that RA Taurchini did not recall seeing the email. It is sufficient to find only that the record does not indicate any response to this email and that its contents were not specifically analyzed in the lead sheets undergirding the Letter 950 and attached revenue agent's report (RAR) (collectively, 30-day letter). See infra p. 6.

**[*6]** Sketch for the tax years at issue "according to * * * [petitioner's] balance sheets at 12/31/2011 and 12/31/2012."

RA Taurchini prepared his RAR, which was issued along with a 30-day letter on August 17, 2016. The 30-day letter proposed myriad adjustments for petitioner's tax years 2010 through 2013 and provided petitioner a right to request a hearing with the Appeals Office within 30 days. As relevant to this case, the 30-day letter proposed adjustments to income of $443,804 and $2,001,844, deficiencies of $56,559 and $542,564, and penalties and additions to tax of $39,517 and $339,103 for tax years 2011 and 2012, respectively.

In response to the 30-day letter, petitioner's representative requested an extension of time to file a protest with the Appeals Office. Petitioner's request was granted on September 19, 2016, extending the deadline to October 31, 2016. On February 27, 2017, RA Taurchini issued an RAR that proposed revised adjustments to income of $280,208 and $1,094,469, deficiencies of $1,774 and $276,663, and penalties and additions to tax of $2,182 and $181,214 for tax years 2011 and 2012, respectively.

On September 7, 2017, respondent issued the notice of deficiency (notice) underlying this case. In the notice respondent determined deficiencies of $1,367 and $190,254 and additions to tax of $951 and $47,564 for tax years 2011 and

[*7] 2012, respectively, as well as an accuracy-related penalty of $38,051 for tax year 2012.  The notice included a Form 886-A, Explanation of Items.  Form 886-A provided respondent's reasoning for his determinations.

On January 25, 2018, petitioner and the trustee filed a joint motion in the bankruptcy court for a proposed order that would allow the trustee to pay from petitioner's bankruptcy estate the full amount of the Commissioner's proposed proof of claim as a deposit and permit petitioner's substantive dispute with the IRS to be adjudicated in a deficiency proceeding in this Court.  The bankruptcy court granted that motion on February 14, 2018.  Petitioner did not file a motion for costs under section 7430 in his bankruptcy proceeding.

II.   Petitioner's Tax Court Proceeding

To resolve his substantive dispute with the Commissioner, petitioner timely petitioned this Court on November 27, 2017.  Respondent filed his answer on January 18, 2018, adopting the same position as that determined in the notice.  The Commissioner then referred this docketed case to the Appeals Office the next day.

The Appeals Office assigned petitioner's case to Appeals Officer Rodney Largent (AO Largent).  AO Largent noted in his case activity record that a critical issue in this examination was "the legal and professional adjustments disallowed for only the accrual issues".  After a 10-month review, AO Largent prepared a

[*8] schedule of adjustments, which addressed seven substantive adjustments as well as the additions to tax for failure to file for tax years 2011 and 2012 and the accuracy-related penalty for tax year 2012 proposed by RA Taurchini.  Of the seven substantive adjustments, four involved the method of accounting dispute. For these, AO Largent concluded that "[t]here isn't sufficient evidence to establish the taxpayer ever used the cash method of accounting" and that "the accrual books appear to clearly reflect income and expenses."  With respect to petitioner's basis in Sketch, AO Largent considered the July 13, 2016, email sent by petitioner's accountant and concluded that "[t]he taxpayer provided a basis computation * * * [that] was sufficient to substantiate basis."  AO Largent also concluded that the additions to tax for both years and the accuracy-related penalty for tax year 2012 should be "conceded in full".

On the basis of the Appeals Office's conclusions, the parties filed a stipulation of settled issues on January 30, 2019.  In the stipulation the parties agreed that petitioner owed deficiencies of only $1,367 and $30,639 for tax years 2011 and 2012 and that no addition to tax or penalty was owed for either year. The stipulation of settled issues ended the substantive dispute between the parties.

On February 28, 2019, petitioner filed a motion for reasonable litigation or administrative costs.  On March 29, 2019, the U.S. Court of Appeals for the Tenth

**[\*9]** Circuit, to which an appeal in this case would ordinarily lie, <u>see</u> sec. 7482(b)(1), issued its opinion in <u>United States v. Johnson</u>, 920 F.3d 639 (10th Cir. 2019), which addressed the proper methodology for determining whether the position of the United States is "substantially justified" within the meaning of section 7430. On May 15, 2019, respondent filed his opposition to petitioner's motion, but that opposition did not discuss the impact of the <u>Johnson</u> case. On February 27, 2020, we issued an order directing the parties to brief the impact of the <u>Johnson</u> opinion on the pending motion, and both parties filed responses. On June 15, 2020, we issued a further order requiring the parties to file a status report indicating whether the parties had held a Rule 232(c) conference and directing petitioner to file an affidavit regarding his claimed costs that complied with the requirements of Rule 232(d) (Rule 232(d) affidavit). Petitioner filed his Rule 232(d) affidavit on July 15, 2020, but this filing did not include sufficient detail with respect to the billing records to meet the requirements of Rule 232(d). Accordingly, on August 19, 2020, we issued yet another order requiring petitioner to supplement his Rule 232(d) affidavit with billing records sufficient to meet the requirements of Rule 232(d). Petitioner filed a supplement to his Rule 232(d) affidavit on September 14, 2020.

**[\*10]**                                                    Discussion

Section 7430(a) authorizes an award for "reasonable administrative costs * * * [and] reasonable litigation costs" to the "prevailing party". A party that otherwise qualifies as a "prevailing party" will not be entitled to an award if the Commissioner can prove that "the position of the United States in the proceeding was substantially justified." Sec. 7430(c)(4)(B)(i). In applying this standard we recognize that the section 7430 is a limited waiver of sovereign immunity and therefore is "construed narrowly in favor of the Government." Johnson, 920 F.3d at 650 (citing Ardestani v. INS, 502 U.S. 129, 137 (1991)). Ordinarily, we consider the position taken in an administrative proceeding separately from the position taken by the Commissioner in his answer in subsequent litigation. See Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997). In this case, however, respondent has conceded that the position taken in the administrative proceeding resulting from petitioner's bankruptcy proceeding is "essentially the same" as the position taken in respondent's answer in this proceeding. If the position of the United States in the administrative proceeding and in its answer was not substantially justified, petitioner bears the burden of proving the reasonableness of his claimed costs. See Rule 232(a); Powers v. Commissioner,

**[\*11]** 100 T.C. 457, 491 (1993), aff'd in part, rev'd in part and remanded, 43 F.3d 172 (5th Cir. 1995).

I.      Whether the Position of the United States Was Substantially Justified

Respondent bears the burden of proof as to whether the position of the United States is substantially justified.  See sec. 7430(c)(4)(B)(i).

For a position to be "substantially justified" it must have a "reasonable basis both in law and fact".  Pierce v. Underwood, 487 U.S. 552, 565-566 (1988).  If the Commissioner "did not follow * * * applicable published guidance", then "the position of the United States shall be presumed not to be substantially justified".  Sec. 7430(c)(4)(B)(ii).  "Applicable published guidance" means regulations, revenue rulings, revenue procedures, information releases, notices, and announcements, as well as private letter rulings, technical advice memoranda and determination letters issued to the taxpayer.  Sec. 7430(c)(4)(B)(iv).

To determine when the United States took a position, we apply section 7430(c)(7)(B), which provides that United States takes a "position" at the earlier of:  (1) the date a taxpayer receives a notice of decision of the Appeals Office, or (2) the date of a notice of deficiency.  As we have elsewhere explained, this provision identifies when the United States takes a position for purposes of section 7430.  See, e.g., Rathbun v. Commissioner, 125 T.C. 7, 13 (2005).

**[*12]** To determine whether the United States' position was substantially justified, we must also identify the nature of the position. Ordinarily, this Court applies an item-by-item analysis, whereby "[t]he justification for each of respondent's positions must be independently determined." Foothill Ranch Co. P'ship v. Commissioner, 110 T.C. 94, 97 (1998). After petitioner filed his motion but before respondent filed his response, however, the U.S. Court of Appeals for the Tenth Circuit issued its opinion in Johnson, 920 F.3d at 649, reversing a District Court which applied a similar item-by-item analysis under section 7430 on the basis that this was an "erroneous methodology". While that case arose under different facts, we conclude that its holding with regard to the proper analysis of a section 7430 claim is "squarely in point". Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). Accordingly, we will apply its analysis.

In Johnson, the Court of Appeals addressed the proper scope of inquiry with regard to whether the "position of the United States" was substantially justified under section 7430. In its analysis, the Court of Appeals drew heavily on caselaw interpreting the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412. The EAJA, using wording similar, though not identical, to that found in section 7430, provides that a court "shall award [fees and other expenses] to a prevailing party"

**[*13]** in any case "brought by or against the United States * * *, unless the court finds that the position of the United States was substantially justified". 28 U.S.C. 2412(d)(1)(A).

Given this linguistic similarity, the Court of Appeals looked to caselaw interpreting the meaning of the "position of the United States" under the EAJA to guide its analysis under section 7430. To start, the Court of Appeals relied on the Supreme Court's statements in Commissioner, INS v. Jean, 496 U.S. 154, 161-162 (1990), that the structure of "the EAJA--like other fee-shifting statutes--favors treating a case as an inclusive whole" when defining the word "position". The Court of Appeals also relied heavily on the analysis in Roanoke River Basin Ass'n v. Hudson (Roanoke), 991 F.2d 132, 139 (4th Cir. 1993), where the U.S. Court of Appeals for the Fourth Circuit first held that the "position of the United States" should be understood as a singular, holistic position rather than multiple itemized contentions. The Court of Appeals in Johnson, 920 F.3d at 649, considered Roanoke's "in-depth analysis of th[is] issue * * * [to be] persuasive" and adopted its approach.

Respondent conceded that in his initial response to petitioner's motion he structured his argument as a line-by-line analysis of the type this Court would ordinarily apply. After reviewing the Johnson standard, however, respondent

[*14] contends that because Johnson "stands for the proposition that substantial justification shouldn't turn on whether the Government was substantially justified on any one thing, but whether looking at the case as a whole, the Government was substantially justified", respondent's entire position was justified. Respondent contends that his position was substantially justified overall even though, in his initial response to petitioner's motion, he previously conceded that at least one substantive issue and its related costs were not substantially justified. Petitioner, by contrast, contends that "applying the holistic approach of Johnson to this case is simply not appropriate and would create an absurd result." Namely, petitioner contends that because the Commissioner "always has the right under * * * [section] 7602 to examine tax returns * * * the Government is always substantially justified from the moment it decides to examine any tax return--and no taxpayer can recover under * * * [section] 7430". Because an examination would always have a basis in law pursuant to the Commissioner's authority to examine any return, petitioner contends that applying Johnson would preclude an award of fees even in cases with egregious misconduct in the examination, and thereby "obliterate the Congressionally-sanctioned and Presidentially-approved remedies provided by * * * [section] 7430".

[*15] While we share some of petitioner's concerns with regard to the interplay of the <u>Johnson</u> standard and the unique provisions of section 7430, we believe that petitioner's hyperbole is misplaced. Upon careful inspection, the <u>Johnson</u> standard--in practice--works in harmony with section 7430 and our caselaw construing it. Accordingly, we next consider how--in practice--this Court should apply the <u>Johnson</u> standard. To start, the "inquiry should focus holistically on 'whether the government acted reasonably in causing the litigation or in taking a stance during the litigation.'" <u>Johnson</u>, 920 F.3d at 649 (quoting <u>Roanoke</u>, 991 F.2d at 139). This means that a trial court "should focus 'not on the government's success or failure [on a particular issue], but on the reasonableness of its position in bringing about or continuing the litigation.'" <u>Id.</u> at 650 (quoting <u>Roanoke</u>, 991 F.2d at 139). And while "the statutory language of § 7430 * * * does not use the terms 'issue' and 'position' interchangeably", a trial court may consider the various contentions taken on individual issues as part of its overall analysis of the holistic position of the United States. <u>Id.</u> at 649-650. This is because, under the <u>Johnson</u> standard, this Court must consider the totality of the circumstances, including the possibility that "a more egregious example of [governmental] misconduct might, even if confined to a narrow but important <u>issue</u>, taint the government's 'position' in the entire case as unreasonable". <u>Roanoke</u>, 991 F.2d at

**[*16]** 139 (emphasis added); see also EEOC v. Memphis Health Ctr., Inc., 526 F. App'x 607, 614-615 (6th Cir. 2013) (citing Roanoke); Gatimi v. Holder, 606 F.3d 344, 349-350 (7th Cir. 2010) (citing Roanoke); United States v. Jones, 125 F.3d 1418, 1429-1431 (11th Cir. 1997); Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 131 (3d Cir. 1993).

With this standard in mind, we turn to whether the position of the United States was "substantially justified" within the meaning of section 7430(c)(4)(B)(i). Respondent contends that, although the Appeals Office eventually conceded both the partnership basis and method of accounting issues, the substantive adjustments he determined were made on the best information available at the time. For those adjustments that relate to the accounting method dispute, respondent further argues that he provided an alternate, independent ground, specifically that each of those adjustments was also made on the basis that petitioner failed to adequately substantiate items underlying the claimed deductions at the time of the notice.

Petitioner counters that RA Taurchini ignored applicable regulations in concluding that petitioner's businesses should have reported on a cash basis and that he also ignored petitioner's documentation with regard to his basis in Sketch. Specifically, petitioner argues that section 1.446-1(c)(2)(i), Income Tax Regs., required businesses that carried inventory, such as petitioner's, to use the accrual

[*17] method of accounting.  He further argues that section 1.446-1(d)(3), Income Tax Regs., required that petitioner's related businesses also use the accrual method of accounting.  He contends that RA Taurchini disregarded these regulations during the examination.  This disregard, in turn, is reflected in the notice of deficiency and in the answer adopting the same position, and thereby taints the position of the United States.  Accordingly, though he does not directly so state, it appears that petitioner would have us presume that respondent's position was not substantially justified by operation of section 7430(c)(4)(B)(ii) and further conclude that respondent's position cannot be substantially justified because there is neither a basis in fact nor a basis in law for the position.

On the record, we conclude that respondent took a position when he issued the notice of deficiency on September 7, 2017, and which he repeated when he filed his answer.  See sec. 7430(c)(7); see also Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 86 (2004), aff'd, 404 F.3d 1291 (11th Cir. 2005).  The contents of the notice help to explain the position taken.  On page 1, the first lines state that the Commissioner determined deficiencies in tax for tax years 2011 and 2012, as well as additions to tax for failure to file for tax years 2011 and 2012 and an accuracy-related penalty for tax year 2012.  This, however, is not the end of the analysis.  Under the Johnson standard, we must consider the position taken

[*18] holistically, with an eye to all facts and circumstances. That is, we must examine the building blocks of the position of the United States to determine whether that position was, on the whole, substantially justified. Specifically, our analysis must take into consideration the Commissioner's contentions--relating to petitioner's basis in Sketch and his method of accounting--asserted during the examination because they formed the basis of the notice of deficiency and were later adopted in respondent's answer.

With regard to the basis dispute, after respondent filed his answer, which he concedes is "essentially the same" as the position taken by the Examination Division, the Appeals Office concluded that petitioner had "provided a basis computation along with prior year workpapers, schedules, and books * * * [that] was sufficient to substantiate basis." The Appeals Office based its conclusion on the July 13, 2016, email from petitioner's accountant to which the revenue agent did not respond. Because this email provided documentation sufficient to substantiate petitioner's basis a month before the issuance of the 30-day letter but was not properly considered in forming the basis substantiation contention reflected in the notice and the answer in this case, we conclude that this contention lacked a reasonable basis in fact.

[*19] With regard to the method of accounting dispute, section 1.446-1(c)(2)(i), Income Tax Regs., provides, in relevant part, that "[i]n any case in which it is necessary to use an inventory, the accrual method of accounting must be used with regard to purchases and sales". Petitioner's restaurant businesses carried inventory during the years at issue, and the notice lists an adjustment to "Sch C1 - Beginning Inventory" that "allow[s] an additional deduction for purchases." Finally, the Appeals Office concluded that "[t]here isn't sufficient evidence to * * * [support] the examiner's determination that in the prior years the taxpayer used the cash method of accounting." Taking these circumstances into consideration, we can find no reasonable legal or factual basis for respondent's determination relating to the proposed change in method of accounting determined in the notice and adopted in the answer. Moreover, we conclude that this contention "did not follow * * * applicable published guidance", specifically section 1.446-1(c)(2)(i), Income Tax Regs. See sec. 7430(c)(4)(B)(ii), (iv)(I). Therefore we are compelled to presume that the overall position of the United States was not substantially justified.

In the face of this presumption, respondent contends that the position of the United States was nonetheless substantially justified because, with regard to the method of accounting contention, the notice also stated that petitioner failed to

[*20] provide adequate substantiation. We disagree. The method of accounting contention was a threshold issue in this examination, and the proper substantiation of expenses will vary depending on the method of accounting a taxpayer uses. More importantly, however, and contrary to respondent's argument, under the Johnson standard, we do not look granularly at the basis of each dispute to attempt to identify a saving basis for the Government. Although we acknowledge that section 7430 represents a limited waiver of sovereign immunity, it must also be a viable path for fee awards in proper circumstances. To identify those circumstances, we look at the overall "reasonableness of * * * [the Government's] position in bringing about or continuing the litigation." Johnson, 920 F.3d at 650 (quoting Roanoke, 991 F.2d at 139).

In bringing about and continuing this litigation, these two determinations were critical elements of the Government's overall claim. By way of illustration, after filing his answer, respondent conceded these determinations and stipulated that petitioner's tax liability was a mere 16% of the original determined deficiency for tax year 2012 and conceded the penalty and the additions to tax. Of course, it is true that conceding a case--even in full--does not, on its own, mean that the position of the United States was not substantially justified. Maggie Mgmt. Co. v. Commissioner, 108 T.C. at 443. But this case does not involve a mere concession

[*21] in respondent's answer; respondent's concessions here came after filing his answer and were made because the Appeals Office concluded that the determination reflected in his answer lacked a basis in fact and law--a conclusion with which we agree. In the light of all the facts of this examination and litigation, we cannot say that the position of the United States was "justified * * * in the main". Underwood, 487 U.S. at 565. Rather, these determinations were contrary to applicable guidance and were lacking in a factual basis, and they tainted the Government's position in the entire case. See Roanoke, 991 F.2d at 139.

For the reasons explained above, we conclude that respondent has failed to prove that the position of the United States was substantially justified under the Johnson standard. Because respondent has otherwise conceded that petitioner is a prevailing party, we further conclude that petitioner is entitled to an award under section 7430.

## II.    Petitioner's Claimed Costs

Although respondent's position was not substantially justified, petitioner still bears the burden of proving that his claimed costs are reasonable. To meet this burden, petitioner has provided billing records for various legal and accounting firms that assisted him during his bankruptcy proceeding, with respect to Colorado State tax disputes, and in this proceeding.

[*22] Section 7430 provides that reasonable litigation and reasonable administrative costs may be awarded to a prevailing party. These costs may be awarded only as to those incurred because of the proceeding in which the party prevailed. Sec. 7430(a); see also Grigoraci v. Commissioner, 122 T.C. 272, 277 (2004) ("Under the plain language of the statute, then, we may award only such administrative or litigation costs as were incurred in connection with the instant proceeding."). In his motion, as supplemented, petitioner has provided extensive billing records, but few of them relate to this proceeding (i.e., few were incurred after petitioner commenced this proceeding by filing a petition with this Court and relate directly to the conduct of this proceeding). Some of the billing records relate to Colorado State tax issues, but most relate to petitioner's prior bankruptcy proceeding.[4]

Petitioner may not recover costs incurred in connection with his bankruptcy proceeding or any proceeding other than this one. While the subject matter examined in the bankruptcy proceeding also gave rise to this proceeding, this is a different proceeding. See Grigoraci v. Commissioner, 122 T.C. at 277. The bankruptcy court was empowered to adjudicate petitioner's Federal income tax

---

[4]In his motion petitioner claims costs from all proceedings totaling $411,106.

**[*23]** liabilities, see 11 U.S.C. sec. 505(a)(1), and to award costs, see Kreidle v. Dept. of the Treasury, IRS (In re Kreidle), 145 B.R. 1007, 1016 (Bankr. D. Colo. 1992); cf. O'Connor v. U.S. Dep't of Energy, 942 F.2d 771, 772-774 (10th Cir. 1991) (holding that bankruptcy courts may award fees under the EAJA). Petitioner could have pursued all his claims relating to his income tax liabilities (including any resultant claim for fees) in that proceeding, but he did not. Rather, he elected to close that proceeding and commence this one. In this context, we cannot say that those costs were incurred with respect to this proceeding. Accordingly, we award only those costs that clearly relate to this proceeding.[5]

After reviewing the record, we find that there are 74.8 hours of professional time expended that qualified for reasonable litigation costs.[6] These hours represent time spent preparing the petition in this case, resolving the substantive issues in the course of this proceeding (generally, the time spent dealing with the

---

[5]While we have considered the nature and impact of the position taken by the Commissioner in the administrative proceedings stemming from petitioner's bankruptcy proceeding to ascertain whether the Commissioner's position was substantially justified, we did so only because of respondent's acknowledgment that his position in his answer in this proceeding was essentially the same as that taken in those proceedings.

[6]This number is the sum of all attorney's fees hours petitioner claimed that relate only to the substantive resolution of this proceeding. These hours are identified infra Appendix A.

**[*24]** Appeals Office after this case was docketed), and the reasonable hours spent resolving this section 7430 motion.

We start with those hours spent resolving the substantive issues in this proceeding. After excluding those claimed costs that relate to other proceedings, we find in petitioner's supplemented Rule 232(d) affidavit 27.4 hours relating to the substantive resolution of this case. This number reflects those billing entries that identify research and drafting relating to this Court, as well as other actions relating to the Appeals Office and the eventual filing of the stipulation of settled issues in this case.[7]

We next examine the hours claimed for the preparation and litigation of this section 7430 motion. As with any claimed litigation cost, we will award petitioner fees for only those hours that represent "reasonable" attorney's fees. Rule 232(d) provides, in relevant part, that "[w]here the Commissioner's response indicates that the Commissioner and the moving party are unable to agree as to the amount of attorney's fees that is reasonable, counsel for the moving party shall, within 30 days after service of the Commissioner's response, file an additional affidavit or

---

[7]Petitioner's costs incurred during consideration of his case by the Appeals Office came after he filed his petition for redetermination of the deficiencies in this Court and related to the negotiation and preparation of a stipulation of settled issues. Accordingly, we treat these costs as reasonable litigation costs within the meaning of sec. 7430 rather than reasonable administrative costs.

**[*25]** declaration which shall include" specifics regarding the moving party's claimed costs. Petitioner's counsel did not file a Rule 232(d) affidavit within 30 days of service of the Commissioner's response, as required.[8] It was not until after this Court's order that a Rule 232(d) affidavit was filed. The initial Rule 232(d) affidavit did not provide sufficient information to satisfy Rule 232(d), however, and we ordered petitioner to file an additional supplement to his Rule 232(d) affidavit. Petitioner's failure to adhere to this Court's Rules was unreasonable, and time spent to rectify that failure will not be included in an award of reasonable litigation costs. Accordingly, we will award petitioner fees for those hours claimed for the research, preparation, and filing of this motion, but we will exclude those hours claimed for the supplementation of the required Rule 232(d) affidavit.[9] After doing so, we conclude that petitioner is entitled to claim 47.4 hours relating to this motion. Adding these to the substantive hours, we come to a total of 74.8 hours.

---

[8] Petitioner's counsel did file a Rule 231(d) affidavit with his motion for costs but failed to file the additional affidavit required by Rule 232(d) after respondent filed his response to the motion.

[9] A chart of all claimed hours relating to this sec. 7430 motion is attached infra as Appendix B. Those hours excluded as relating to the Rule 232(d) affidavit supplementation are marked with an "*".

[*26] We now turn to petitioner's contention that he is entitled to a rate enhancement because of the presence of a special factor. Generally, attorney's fees are awardable only at the statutory rate. Sec. 7430(c)(1)(B)(iii). For calendar years 2015 through 2018, this rate is $200 per hour. See Rev. Proc. 2014-61, sec. 3.43, 2014-47 I.R.B. 860, 868; Rev. Proc. 2015-53, sec. 3.50, 2015-44 I.R.B. 615, 627; Rev. Proc. 2016-55, sec. 3.54, 2016-45 I.R.B. 707, 717; Rev. Proc. 2017-58, sec. 3.54, 2017-45 I.R.B. 489, 499. Where a prevailing party establishes that a special factor applies, the Court may depart upward from the statutory rate. Sec. 7430(c)(1)(B)(iii); sec. 301.7430-4(b)(3)(iii)(B), Proced. & Admin. Regs.

Petitioner contends that he is entitled to an enhancement of the statutory rate because it would be impossible to retain qualified counsel at the statutory rate and because of the difficulty of the issues presented in this case. Respondent counters that these facts, standing alone or together, do not justify a departure from the statutory rate. We agree with respondent.

While petitioner may or may not have been able to retain counsel at the statutory rate, he cannot show that his market lacked competent counsel overall. Even assuming that petitioner's claims are accurate, he has shown only that he could not retain those counsel at the statutory rate--and that is not enough to establish a special factor permitting an upward departure. E.g., BASR P'ship v.

[*27] <u>United States</u>, 130 Fed. Cl. 286, 311 (2017) (summarizing cases for the proposition that the inability to secure counsel at the statutory rate is not a special factor), <u>aff'd</u>, 915 F.3d 771 (Fed. Cir. 2019).  Moreover, while this case has a long, knotted procedural background, the issues involved are ordinary questions of proper accounting methods and substantiation.  These are not the types of egregiously complex legal or factual matters that justify an upward departure from the statutory rate.  <u>See, e.g.</u>, <u>Corson v. Commissioner</u>, 123 T.C. 202, 212 (2004).  Accordingly, we conclude that petitioner has failed to prove his entitlement to such a departure.

Because no special factor applies, we conclude that petitioner is entitled to an award at the statutory rate.  Applying that rate ($200 per hour) to the reasonable litigation hours proven (74.8 hours), we come to $14,960.  To this we will also add the cost of filing his petition, which is $60 as well as $14 for its mailing.  Consequently, we award petitioner reasonable litigation costs of $15,034.

We have considered the remaining arguments of both parties for results contrary to those expressed herein, and, to the extent not discussed above, we find those arguments irrelevant, moot, or without merit.

[*28] To reflect the foregoing,

An appropriate order and decision will be entered.

**[*29]**                                       APPENDIX A

Reasonable Claimed Hours Relating to the Substantive Aspects of This Proceeding

| Date | Billing entry[1] | Number of hours |
|---|---|---|
| Nov. 20, 2017 | Review and revise Tax Court petition | 1.2 |
| Nov. 21, 2017 | Revise and finalize petition | 2.2 |
| Mar. 23, 2018 | Telephone to AO; respond to client emails | 0.2 |
| Apr. 17, 2018 | Prep letter and fax to AO Largent re accrual issue; prep for Appeals conference | 2.1 |
| Apr. 18, 2018 | Conference with client; attend Appeals Conference | 3.0 |
| May 22, 2018 | Meet with client; attend Appeals Conference | 1.0 |
| June 12, 2018 | Review Jesse's letter to AO Largent; telephone to Jesse; telephone to AO Largent | 0.8 |
| July 9, 2018 | Review letter to AO Largent; prep for appeals hearing; attend hearing; legal research re NOL, IRC 172, Farmer v Commissioner | 3.4 |
| July 10, 2018 | Telephone from client re NOL and tip credit issues | 0.3 |
| July 11, 2018 | Telephone with Jesse and Matt re interest, IRS, and Trustee; legal research re FICA tips credit carry forward and IRC 6511 | 2.8 |
| July 12, 2018 | Draft and finalize letter to AO Largent re FICA tip credits; telephone from Client re Largent follow up; revise letter to Largent | 2.7 |

| [*30] July 13, 2018 | Revise and finalize letter to AO Largent re tip credits; review Jesse's letter to AO Largent; telephone to Jesse | 2.4 |
|---|---|---|
| Aug. 3, 2018 | Telephone with AO Largent and Jesse re agreed adjustments | 0.5 |
| Sept. 14, 2018 | Teleconference with Jessee [sic] and Rodney Largent re PAL limitations | 0.9 |
| Oct. 23, 2018 | Phone conference with Rodney and Jesse re settlement; phone conference with Jesse re district counsel, stip, and decision documents | 1.4 |
| Dec. 14, 2018 | Review proposed Stip and Decision document; review Appeals adjustments and file; prep emails to client and opposing counsel; telephone client and opposing counsel | 1.0 |
| Dec. 18, 2018 | Prep email to opposing counsel re Stip concerns | 0.3 |
| Dec. 19, 2018 | Telephone with Jesse and opposing counsel re stip and decision document changes | 0.8 |
| Jan. 28, 2019 | Telephone with J Pugh's clerk and supervising IRS lawyer; prep email to client | 0.4 |

Total substantive hours:  27.4

[1]Billing entry text is quoted from the billing records filed in petitioner's supplemented Rule 232(d) affidavit.

**[*31]**                                    APPENDIX B

Claimed Attorney's Fee Hours Relating to Section 7430 Motion
(Hours Disallowed Marked With "*")

| Date | Billing entry[1] | Number of hours |
|------|------------------|-----------------|
| Jan. 4, 2019 | Legal research re IRC 7430 procedures and 28 USC 2412 | 0.7 |
| Feb. 11, 2019 | Legal research re filing application for costs and fees with IRS and filing motion for costs and fees with Tax Court | 3.2 |
| Feb. 12, 2019 | Prep application and request to IRS re IRC 7430 | 3.4 |
| Feb. 13, 2019 | Prep application and request for fees | 1.5 |
| Feb. 13, 2019 | Finish draft of application; draft 2 affidavits | 5.2 |
| Feb. 14, 2019 | Legal research re special factor adjustments for affidavit increase in billing rate; prep affidavit; supplement affidavit and application; revise and finalize affidavit and application | 6.3 |
| Feb. 25, 2019 | Draft motion for fees and costs | 3.7 |
| Feb. 26, 2019 | Supplement and finalize motion for fees; draft affidavits | 2.3 |
| Feb. 27, 2019 | Finalize motion for fees | 1.2 |
| Mar. 6, 2019 | Review TC order re 7430; prep email to client; telephone to Malone Camp | 0.4 |

| | | |
|---|---|---|
| [*32]Mar. 7, 2019 | Telephone conference with Tax Court judge and opposing counsel re motion for fees; telephone to client re conference; legal research re entry of decision; review BK stips and order; prep email to client | 2.4 |
| Mar. 10, 2019 | Legal research re deposits and returns, and Tax Court procedure | 1.2 |
| July 17, 2019 | Prep for and attend conference with IRS re motion for fees | 1.6 |
| Oct. 4, 2019 | Prep and finalize motion to continue hearing | 2.4 |
| Oct. 21, 2019 | Telephone to judge clerk re setting phone conference | 0.2 |
| Oct. 22, 2019 | Prep for and attend phone conference re motion to continue | 0.9 |
| Mar. 11, 2020 | Review and summarize Johnson case | 0.8 |
| Mar. 23, 2020 | Draft response to order re Johnson case | 2.6 |
| Mar. 24, 2020 | Finalize response | 1.6 |
| Mar. 28, 2020 | Review IRS response to order; supplement response | 0.4 |
| June 19, 2020 | Telephone with client re response to order | 0.2 |
| June 23, 2020 | Review file in preparation for response to order about additional affidavits; prep email to client | 1.1 |
| June 24, 2020 | Draft and finalize email to Malone Camp re status report, conference | 0.7 |
| July 8, 2020 | Review file and correspondence; prep response to J Marvel | 1.0 |

**[*33]** July 12, 2020 | Prep Rule 232 conference status report; draft part of Rule 232(d) affidavit | 2.4

July 13, 2020 | Supplement Rule 232(d) affidavit | 4.6*

July 14, 2020 | Review and supplement affidavit | 0.8*

July 15, 2020 | Supplement and finalize affidavit | 0.5*

Aug. 21, 2020 | Telephone from client re recent order | 0.2*

Total: 53.5 hours

Total without * hours: 47.4 hours

[1]Billing entry text is quoted from the billing records filed in petitioner's supplemented Rule 232(d) affidavit.